UNITED STATES of America,
Appellee/Cross–Appellant,

v.

Sharon M. SHEPHERD, a/k/a Sharon S.
Ortega, Appellant/Cross–Appellee.

Nos. 94–3120, 94–3126, 94–
3143 and 94–3144.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 15, 1996.

Decided Dec. 6, 1996.

As Amended Jan. 31 and March 4, 1997.

A.J. Kramer, Federal Public Defender, Washington, DC, argued the cause and filed the briefs for appellant/cross-appellee Sharon M. Shepherd.

Barbara R. Miller, appointed by the court, Washington, DC, argued the cause and filed the briefs for appellant/cross-appellee Marvin Binion.

Vicki S. Marani, Attorney, U.S. Department of Justice, Washington, DC, argued the cause for appellee/cross-appellant. Eric H. Holder, Jr., U.S. Attorney, Julie J. Shemitz, and Kathleen A. Felton, Attorneys, U.S. Department of Justice, Washington, DC, were on the briefs.

Before: WILLIAMS, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

In these consolidated appeals, appellants Sharon Shepherd[1] and Marvin Binion challenge their convictions by a jury of conspiracy to distribute and possess with intent to distribute fifty or more grams of crack cocaine and 500 or more grams of powder cocaine, and distribution of 500 or more grams of powder cocaine. Shepherd also challenges her convictions for distributing fifty or more grams of crack cocaine and for using or carrying a firearm during and in relation to a drug trafficking crime. Because we conclude that Shepherd was entitled to enter a plea to the indictment, we remand

---

1. At trial, Sharon Shepherd was referred to by her alias, Sharon Ortega. On appeal, we use her legal name, Shepherd.

her case to allow her to so plead; hence, we do not reach her other contentions. Binion's contentions regarding the denial of a continuance to obtain new counsel, the denial of lesser included offense and venue instructions, and the sufficiency of the evidence of conspiracy, are meritless. In a cross-appeal, the government challenges appellants' sentences, citing *United States v. Walls,* 70 F.3d 1323 (D.C.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1445, 134 L.Ed.2d 565 (1996), for the proposition that a government agent's insistence on purchasing crack cocaine rather than powder cocaine is insufficient to establish "sentencing entrapment." In light of *Walls,* we remand both cases for resentencing.

## I.

The evidence at trial showed that on three occasions in the fall of 1993 Sharon Shepherd sold crack cocaine and powder cocaine to Mark Ross, a Special Agent of the Drug Enforcement Administration ("DEA") posing as a crack cocaine dealer. The first sale occurred on September 30, after a confidential informant arranged for Ross to purchase four ounces of crack cocaine from Shepherd. That day, Ross drove to an office building at 7835 Eastern Avenue, N.W., and met Shepherd, who was waiting outside. Shepherd told Ross that the crack cocaine had not yet arrived but that he should put the money for the drugs in her handbag. When Shepherd opened her handbag, Ross saw a 9 mm handgun without a magazine or clip in it. Shepherd explained that she needed the gun because, as a woman, she had to protect herself and was "afraid she might get ripped off or something." Ross refused to "front" the money, wanting first to see what he was buying. Shepherd then went into 7835 Eastern Avenue and entered a door marked "People's Tax Service," a tax preparation service owned by Marvin Binion. While Shepherd was inside, Binion also went into the building. Shepherd shortly returned with powder cocaine and told Ross that it had not yet been "cooked" into crack cocaine. Ross stated that he wanted to buy crack cocaine, and Shepherd promised to cook the powder in her apartment in Southwest Washington, D.C. At that time, Shepherd told Ross that Binion was the source of her drug supply.

Later that day, when the crack cocaine was ready, Shepherd paged Ross from Binion's office. Ross returned to Eastern Avenue and purchased approximately 100 grams of crack cocaine from Shepherd.

The second sale took place on November 18, 1993. When Ross returned to 7835 Eastern Avenue, Shepherd told him that the drugs had not yet arrived and went into the building. While Shepherd was inside, Ross saw Binion go in and out of the building. Shepherd returned to Ross, showed him some powder, and then went back into the building. Emerging a few minutes later, Shepherd told Ross that it would take a little while to cook the cocaine because the microwave oven in Binion's office was in use. Later that day, Ross purchased four ounces of crack cocaine from Shepherd.

The third sale, on December 8, 1993, involved a kilogram of powder cocaine. Shepherd had explained to Ross that her supplier did not want to deliver the drugs as crack cocaine, but had promised to do the cooking herself. On December 8, Ross drove back to Eastern Avenue with the drug money. Shepherd went inside the Eastern Avenue building, and upon returning, told Ross that half the kilogram was gone, but he could buy the remainder. Before Ross could buy the drugs, however, Shepherd reported that the remaining half kilogram was gone but that someone would bring another kilogram shortly. Ross left, and within a few minutes, returned upon learning from Shepherd that a new kilogram had arrived. After Shepherd and Binion got into Ross' car, Binion handed a bag to Shepherd, who pulled out another brown bag containing approximately 990 grams of powder cocaine. Shepherd gave the bag to Ross, and after looking inside, Ross got out of the car, ostensibly to get drug money from the car trunk. Ross signaled nearby agents, who arrested Shepherd and Binion.

The agents recovered from Binion's office a microwave oven, two razor blades and baking soda near the microwave—objects associated with the conversion of powder cocaine into crack cocaine—and a balance beam scale on which there was a plastic bag containing mannitol, a substance used to add bulk to similar powder-like substances. They also found about two grams of powder cocaine in

a briefcase belonging to Binion. At Shepherd's apartment, agents found the gun that Ross had seen in Shepherd's handbag on September 30 and a digital scale with white powder on it.

Shepherd and Binion were indicted for conspiracy to distribute, and to possess with intent to distribute, fifty or more grams of crack cocaine and 500 or more grams of powder cocaine;[2] distribution of fifty or more grams of crack cocaine on September 30 and November 18, 1993;[3] and distribution of 500 or more grams of powder cocaine on December 8, 1993. A third defendant, Gabriel Zapata, was also indicted for the conspiracy and distribution of 500 or more grams of cocaine charges. In addition, Shepherd was indicted for using and carrying a firearm on September 30, 1993, during and in relation to a drug trafficking crime.[4]

A jury found Shepherd guilty on all counts, and Binion guilty of conspiracy and distribution of 500 or more grams of powder cocaine on December 8, 1993; the jury acquitted Binion of the drug sales on September 30 and November 18, 1993. The jury found Zapata not guilty. The district court sentenced Shepherd to concurrent terms of 60 months' imprisonment for the distribution and conspiracy convictions, and a consecutive term of 60 months for the firearms conviction; the court sentenced Binion to concurrent terms of 63 months' imprisonment for the distribution and conspiracy convictions.

## II.

Shepherd contends that the district court abused its discretion in rejecting her request to plead guilty to the indictment. Under a plea agreement with the government, Shepherd would have testified about her codefendants' involvement in the charged offenses, and the government would have recommended to the departure committee of the United States Attorney's Office that it file a motion requesting downward departures from the Sentencing Guidelines and the mandatory minimum sentences.[5] Any prejudice to her codefendants that might have resulted from her mid-trial plea, she maintains, should have been addressed by cautionary instructions, not by a summary rejection of her plea.

At the end of the first day of trial, while Agent Ross, the government's first witness, was testifying on direct examination, Shepherd's counsel advised the district court that Shepherd had reached an agreement with the government to plead guilty to the indictment and to testify for the government against her codefendants. Acknowledging that a mid-trial plea was unusual, counsel explained that Shepherd had agreed to plead several months earlier, but, intimidated by her codefendants, had changed her mind several times. Counsel stated that Shepherd had decided that afternoon to cooperate with the government, and with the court's approval, would be debriefed by the government that evening and change her plea the following morning. In return, the government would recommend that the departure committee seek a sentencing departure below both the Sentencing Guidelines provision, *see* U.S.S.G. § 5K1.1,[6] and the mandatory minimum sentence, *see* 18 U.S.C. § 3553(e).[7] The district court rejected the plea request. Our review is for abuse of discretion. *See United States v. Maddox,* 48 F.3d 555, 556 (D.C.Cir.1995); *United States v. Washington,* 969 F.2d 1073, 1077 (D.C.Cir.1992), *cert. denied,* 507 U.S. 922, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993).

It has long been recognized that "'plea bargaining[ ]' is an essential component of the administration of justice." *San-*

2. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 841(b)(1)(B)(ii), 846.

3. *Id.* §§ 841(a)(1), 841(b)(1)(A)(iii); 18 U.S.C. § 2.

4. 18 U.S.C. § 924(c)(1).

5. The government acknowledged in its brief, and at oral argument in this court, that it had agreed to recommend a departure for Shepherd from both the Sentencing Guidelines and the mandatory minimum sentence.

6. U.S.S.G. § 5K1.1 provides, in relevant part:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

7. 18 U.S.C. § 3553(e) provides, in relevant part: Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

tobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); see also Maddox, 48 F.3d at 558. Not only does "[i]t lead[ ] to prompt and largely final disposition of most criminal cases," Santobello, 404 U.S. at 261, 92 S.Ct. at 498 (citing Brady v. United States, 397 U.S. 742, 751–52, 90 S.Ct. 1463, 1470–71, 25 L.Ed.2d 747 (1970)), often affording the government additional leverage in prosecuting other crimes, but it allows defendants who wish to acknowledge their guilt "to spare themselves and their families the spectacle and expense of protracted courtroom proceedings." United States v. Jackson, 390 U.S. 570, 584, 88 S.Ct. 1209, 1217, 20 L.Ed.2d 138 (1968). While a defendant has "no absolute right to have a guilty plea accepted," Santobello, 404 U.S. at 262, 92 S.Ct. at 498; Maddox, 48 F.3d at 558, "the fact that . . . guilty pleas may occasionally be rejected hardly implies that all defendants may be required to submit to a full-dress jury trial as a matter of course." Jackson, 390 U.S at 584, 88 S.Ct. at 1218. In this circuit, the district court may reject a plea, but in so doing, it "must provide a reasoned exercise of discretion in order to justify a departure from the course agreed on by the prosecution and defense." Maddox, 48 F.3d at 558 (quoting United States v. Ammidown, 497 F.2d 615, 622 (D.C.Cir.1973)); see also Santobello, 404 U.S. at 262, 92 S.Ct. at 498. The district court gave four reasons for rejecting Shepherd's plea request, and we address each in turn.

■ First, the district court noted the timing of the request: "It comes rather late in the middle of the trial." Had the plea come up "a week or two or three" before the trial, the court stated that it would not have had "any trouble" with the plea. Clearly, the lateness of Shepherd's request to plea was a proper factor for the court to consider. But given the weighty interests of the defendant and the government at stake, it is also significant that Shepherd's request came at the beginning of trial with a plausible explanation for the delay. When Shepherd requested to plea, the government's first witness was still undergoing direct examination. As her counsel explained, the delay was caused in part by Shepherd's fear of her co-defendants, who were incarcerated in the same detention facility, and what would happen to her if she were to testify against them; the district court expressed no doubt about this explanation. As cases in other circuits demonstrate, it would hardly have been unreasonable for the court to have accepted Shepherd's plea. For example, in United States v. Pierro, 32 F.3d 611, 616 (1st Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 919, 130 L.Ed.2d 799 (1995), the First Circuit rejected a defendant's contention that the district court erred in denying his motion for a mistrial when his codefendant abruptly pleaded guilty after eighteen days of trial and agreed to testify for the government, concluding that there was no unfair prejudice to the defendant. The Seventh Circuit reached a similar conclusion in United States v. Thomas, 774 F.2d 807, 809–10 (7th Cir.1985), cert. denied, 475 U.S. 1024, 106 S.Ct. 1218, 89 L.Ed.2d 329 (1986), where a codefendant changed his plea and testified for the government nine days into a sixteen-day trial.

■ Second, the district court concluded that "it would prejudice the other defendants to have one of them capitulate in the middle of the trial and I don't want that prejudice to occur." The court did not precisely identify the nature of the prejudice, but, obviously, causing codefendants to reassess their trial strategy at mid-trial is an appropriate and serious concern. The district court did not suggest, however, that the prejudice to Shepherd's codefendants would have been unfair, see Pierro, 32 F.3d at 617 & n. 5, much less that any unfair prejudice to them could not have been resolved or mitigated through other means. Shepherd had been considering whether to plead for some time, and her codefendants might have been aware of this possibility, although, admittedly there is no direct evidence in the record to show that they were. Still, as the First Circuit observed, where a "newly pleaded defendant takes the witness stand and testifies against the remaining defendants . . . the court ordinarily can proceed with the trial after appropriately instructing the jury concerning the change of plea and the newly proffered testimony." Id. at 617; see also Thomas, 774 F.2d at 809. Furthermore, the government supported Shepherd's plea request, and her codefendants expressed no objection on the record. Absent any indication that the po-

tential prejudice would have been unfair, the district court's concern about prejudice appears less weighty than its comment suggests.

Third, the district court concluded that by pleading to the indictment, Shepherd would have been no better off. Under the terms of the agreement, the government promised only to write a letter to the U.S. Attorney's departure committee describing any assistance Shepherd might provide and recommending the filing of a departure motion based on her substantial assistance. Because the agreement assured neither that the government would file the motion nor that the district court would grant it, the district court reasoned that the potential benefit to Shepherd was merely "conjectural." Yet the absence of a guarantee that Shepherd's sentence would have been reduced did not mean that the plea agreement offered her no benefit. Based on the government's evidence, Shepherd and her counsel could reasonably anticipate the likelihood of her conviction on all counts. Had Shepherd been able to plead, on the other hand, she would have had the opportunity to assist the government and qualify for more favorable sentencing treatment. The district court's assurance, were Shepherd convicted, that it would take her offer to plea into account at sentencing was unsatisfactory from Shepherd's perspective. Her counsel pointed out that the district court's promise was "not going to do her any good" because she would face at least the mandatory minimum sentence for the drug convictions. Only by assisting the government would Shepherd have been eligible for a departure below the mandatory minimum.[8] Under the circumstances, the decision whether to risk that her sentence might not be reduced after she pleaded to the indictment and testified against her codefendants was for Shepherd to make, not the district court.

Finally, the district court expressed concern that because Shepherd had "gone back and forth" on whether to plead, there was a possibility that she might change her mind again, claiming coercion. The court did not expand on what coercion it had in mind.

Shepherd's indecision, explained in part by her fear of her codefendants, did not necessarily mean that she would claim coercion thereafter. As this court recognized in *Maddox*, a defendant's initial reticence or denial of factual guilt does not preclude the subsequent entry of a guilty plea. 48 F.3d at 559–60. If the voluntariness of the proffered plea is at issue, "the court must at least exercise its discretion to ascertain whether its ... concerns [about the defendant's earlier position] have been addressed." *Id.* at 560. The district court gave no indication why a Rule 11 inquiry would not have afforded the appropriate means by which to verify the voluntariness of Shepherd's plea. Fed.R.Crim.P. 11(d); *see also Washington*, 969 F.2d at 1077.

For these reasons we are constrained to conclude that the district court's explanation for rejecting Shepherd's request to plead guilty fails to overcome her interest and the public's interest that are at stake. The resulting prejudice to Shepherd cannot be dismissed as insubstantial. Although "[p]rejudice is more readily apparent where the rejection of the plea leads to conviction of a greater offense than that offered in a plea agreement," *id.* at 1079, prejudice still may exist when the defendant is ultimately convicted of the same offenses to which she attempted to plead guilty. *Maddox*, 48 F.3d at 560. Shepherd did not lose the opportunity to avoid conviction on certain offenses, but she did lose the opportunity to assist the government and thereby place herself in a position to have her sentence reduced below the mandatory minimum. Just as the "remote possibility" of collateral consequences resulting from additional convictions constitutes prejudice, *id.*, so does the possibility that beneficial sentencing consequences were foreclosed. By rejecting her request to plead guilty, the district court frustrated Shepherd's ability to qualify for more favorable sentencing treatment when the court itself was constrained by law to offer no more than what Shepherd deemed to be an inadequate alternative. Especially in view of the government's promise to submit a letter to the departure

---

8. At the time of Shepherd's sentencing, the district court could depart below the mandatory minimum sentence only on motion by the government pursuant to 18 U.S.S.G. § 3553(e). As amended September 13, 1994, the district court may, in limited circumstances not relevant here, depart *sua sponte* from the mandatory minimum. *See id.* § 3553(f) (Supp.1995).

committee recommending the filing of a departure motion, the prejudice is plain.

Accordingly, we remand Shepherd's case with instructions to vacate the judgment of conviction in order to allow her to enter a guilty plea to the indictment *nunc pro tunc*, and for resentencing.[9] Upon acceptance of Shepherd's plea, the district court shall determine whether it is more likely than not that if Shepherd had been allowed to plead and testify against her codefendants, the departure committee would have found that she provided substantial assistance and filed a motion for a downward departure from the Sentencing Guidelines and the mandatory minimum sentences for the drug offenses. *Cf. United States v. Goossens*, 84 F.3d 697, 704 (4th Cir.1996).

## III.

Turning to Binion's challenges to his convictions, our discussion is brief because his challenges clearly lack merit.

■ **Continuance.** We find no abuse of discretion by the district court in denying Binion's motion for a continuance four days before trial in order to obtain new counsel. Binion's motion to continue the trial "to a date when Attorney R. Kenneth Mundy can try the case" was based on his desire to dismiss his counsel Robert Mance; Binion felt uncomfortable with Mance and lacked confidence in his handling of the case. Binion informed the court that while he had had "a lot of conflicts" with Mance on strategy, he had a "very good relationship" with Mundy, who had represented him at arraignment. Alternatively, Binion requested that Mance be allowed to withdraw and that he be given the opportunity to retain new counsel. Mance, in turn, acknowledged that his relations with Binion had become "very strained" and that Binion lacked confidence in his judgment. The government did not oppose the motion: the continuance would not disturb the schedule for pretrial motions and the government sought a one-week continuance because a trial prosecutor had to attend to a family illness. Further, according to the government, neither codefendant opposed a

brief continuance, and Mundy would be available for trial in ten days, on April 25, 1994. The district court denied the continuance because of the lateness of Binion's request, the difficulties in rescheduling the court's calendar and the witnesses, and the court's confidence in Mance's competence to represent Binion.

■ Although the Sixth Amendment guarantees that "a defendant must be afforded a reasonable opportunity to secure counsel of his own choosing," *United States v. Burton*, 584 F.2d 485, 489 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979), the right to retain counsel of one's choice "is not boundless," and must be balanced against the "judicial system's interest in expeditious proceedings." *United States v. Poston*, 902 F.2d 90, 96 (D.C.Cir.1990); *see also Burton*, 584 F.2d at 489. In view of the factors that the district court should consider when deciding whether to grant a continuance to substitute counsel, *Burton*, 584 F.2d at 490–91; *see Poston*, 902 F.2d at 97, it is clear that there are no compelling circumstances here as would demonstrate an abuse of discretion. *See Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). Nothing in the record suggests that the district court could not have reasonably concluded that although Binion may have preferred other counsel, Mance, whom Binion retained, was "competent and well-equipped" to handle Binion's defense. Even on appeal, Binion points to no specific instance in which he disagreed with Mance regarding his defense. Given the public's "strong interest in the prompt, effective, and efficient administration of justice," *Poston*, 902 F.2d at 96 (quoting *Burton*, 584 F.2d at 489), the district court properly considered its crowded calendar, which included two multiple-defendant trials set for early the next month. Furthermore, the fact that Mundy had represented Binion at arraignment suggests that Binion could have determined Mundy's availability for trial at an earlier time.

■ **Denial of requested instructions.** We find meritless Binion's contention that

9. Because the government presented sufficient evidence to support Shepherd's firearm conviction under 18 U.S.C. § 924(c), there is no bar to

her pleading to count three of the indictment. *See Burks v. United States*, 437 U.S. 1, 10–11, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

the district court erred in denying his request for lesser included offense instructions. Although the government introduced evidence that the DEA agents found two grams of cocaine in Binion's briefcase on the day of his arrest, it did not indict Binion for the two grams, and there was no evidence that the cocaine to be distributed included the two grams. To the contrary, Binion testified that those drugs were for his personal use. Hence, the district court properly denied Binion's request that the jury be instructed on the lesser included offense of simple possession of cocaine or of conspiracy to possess cocaine. *See United States v. Harley,* 990 F.2d 1340, 1344 (D.C.Cir.1993), *cert. denied,* 510 U.S. 885, 114 S.Ct. 236, 126 L.Ed.2d 190 (1993).

■ Likewise, we find no basis to conclude that the district court's denial of a request for an instruction on venue was plain error. Although the jury must determine beyond a reasonable doubt every element of the crime charged, *see United States v. Gaudin,* 115 S.Ct. 2310, 2314 (1995), the Supreme Court did not reach the question whether venue is an element of the offense of false statements, *id.* at 2321 (Rehnquist, C.J., concurring), much less of the crimes with which Binion was charged. On appeal, Binion simply adopts Shepherd's contention that notwithstanding the defendants' failure to offer any evidence to contest the government's evidence that the environs of 7835 Eastern Avenue, N.W., were within the District of Columbia, the district court erred in not instructing the jury on venue. Binion did not propose a venue instruction or protest the district court's rejection of Shepherd's request. We need not resolve the question whether venue is an element of the crimes at issue in the instant appeals because the defendants' position at trial was insufficient "to alert the trial court to [the] current claim" that every material element, including jurisdictional ones, regardless of whether there is a disputed issue of fact, must go to the jury. *See United States v. Spriggs,* slip op. at 23–24 (D.C.Cir. Dec. 17, 1996); *United States v. Winstead,* 74 F.3d 1313, 1321 (D.C.Cir.1996); *see also* Fed.R.Crim.P. 30. Prior to *Gaudin,* courts considered themselves entitled to rule on venue as a matter of law if there were no disputed issues of material fact. *See, e.g., United States v. Bascope–Zurita,* 68 F.3d 1057, 1062–63 (8th Cir.1995).

■ **Sufficiency of evidence of conspiracy.** Likewise, Binion's challenge to the sufficiency of the evidence of conspiracy to distribute crack cocaine is meritless. Viewed in the light most favorable to the government, *United States v. Monroe,* 990 F.2d 1370, 1373 (D.C.Cir.1993), the evidence showed that on two occasions, Shepherd sold crack cocaine outside the Eastern Avenue building when Binion was inside, and on a third occasion, Binion personally participated in the sale of a large amount of powder cocaine to Agent Ross. For each drug sale, Shepherd walked in and out of the Eastern Avenue building, and except for the last occasion when the sale was aborted by her arrest, Shepherd used Binion's office before finally presenting the crack cocaine for sale to Ross. During their initial drug transaction Shepherd told Ross that Binion was the source of her drug supply, and later advised Ross that her supplier did not want to sell the drugs as crack cocaine. But Binion's offices contained the equipment and supplies used to convert powder cocaine into crack cocaine, and he admitted that he knew that Shepherd and his secretary smoked crack cocaine in his office. From this evidence the jury could reasonably find that Shepherd and Binion conspired to distribute crack cocaine. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *see also United States v. Wood,* 879 F.2d 927, 938 (D.C.Cir.1989).

## IV.

■ The government's cross-appeal challenges the lawfulness of Shepherd's and Binion's sentences. *United States v. Shepherd,* 857 F.Supp. 105 (D.D.C.1994). Citing *Walls,* 70 F.3d 1323, decided after appellants' sentencing, the government contends that the district court erred as a matter of law in imposing sentences below the mandatory minimum for crack cocaine convictions. Accepting as true the district court's finding that Shepherd sold crack cocaine only after Agent Ross insisted on purchasing crack cocaine rather than powder cocaine, the government maintains that, under *Walls,* these facts do not establish a valid sentencing entrapment claim, assuming that such a claim is viable after *Walls.*

In sentencing appellants, the district court declined to impose the sentences applicable to convictions involving crack cocaine and instead imposed sentences applicable to convictions involving powder cocaine because the

court found that Agent Ross' insistence on purchasing crack cocaine after Shepherd presented him with powder cocaine was specifically designed to manipulate her sentence. *Shepherd*, 857 F.Supp. at 111. Such "outrageous" manipulation by a government agent, the district court concluded, was grounds for sentencing Shepherd as though she had been convicted of powder cocaine crimes. *Id.* The district court relied on two theories, "sentencing entrapment," which focuses on whether outrageous official conduct "overcomes the will of an individual predisposed only to" engaging in lesser crimes, and "sentencing factor manipulation," which involves "outrageous government conduct that offends due process." *Id.* at 110. Finding that Shepherd was predisposed on September 30 and November 18, 1993, only to distribute powder cocaine, the court applied the mandatory minimum and Sentencing Guidelines provisions "that would have been applied absent the manipulative conduct of the agent ...." *Id.* (applying U.S.S.G. § 2D1.1(c)(9) and 21 U.S.C. § 841(b)(1)(B)). In sentencing Binion, the district court applied the same provisions. While acknowledging that it could consider the evidence in support of the two crack cocaine distribution counts of which Binion had been acquitted, *see United States v. Boney*, 977 F.2d 624, 635–36 (D.C.Cir.1992), the court found that Binion only possessed powder cocaine and concluded that Binion was responsible only for what the court had attributed to Shepherd, namely, the distribution of powder cocaine rather than crack cocaine.

In *Walls*, this court rejected the contention that insistence by government agents that cocaine be delivered in crack form constitutes "sentencing entrapment." 70 F.3d at 1329. Observing that "the Supreme Court has warned against using an entrapment defense to control law enforcement practices of which a court might disapprove," *id.* (quoting *United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973)), the court stated that "[t]he main element in any

entrapment defense is [ ] the defendant's 'predisposition'—'whether the defendant was an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself·[or herself] of the opportunity to perpetrate the crime.'" *Id.* (quoting *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (quoting *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958))). Consequently, where the defendants "showed no hesitation in committing the crimes for which they were convicted," an entrapment defense is unavailable. *Walls*, 70 F.3d at 1329. The two defendants, the *Walls* court observed, "could hardly be described as innocents[:]" the fact "[t]hat they would have sold powder cocaine had the agents not negotiated for crack proves only that [the defendants] were predisposed to commit both offenses. ... [The defendants] distributed crack cocaine when given the chance." *Id.* "If the propriety of the agents' conduct had any significance," the *Walls* court added, it would only arise if the agents' conduct were "so outrageous that due process principles would absolutely bar the government from involving judicial processes to obtain a conviction." *Id.* (internal citations and quotation marks omitted). "Without 'coercion, violence or brutality to the person,' we ruled in *United States v. Kelly*, 707 F.2d 1460, 1476 (D.C.Cir.), *cert. denied*, 464 U.S. 908, 104 S.Ct. 264, 78 L.Ed.2d 247 (1983), there could be no due process violation." *Walls*, 70 F.3d at 1330. The court therefore rejected the contentions that the agents' insistence on purchasing crack cocaine rather than powder cocaine would entitle the defendants to reversal of their convictions for crack cocaine or that such conduct would provide any constitutional basis to reduce their sentences. *Id.* "Whatever vitality the outrageous-conduct defense might have for [setting aside a defendant's conviction] ... we conceive of no basis for allowing this defense, or some variant of it, to reduce a defendant's sentence." *Id.* at 1329–30.

In view of the similarity of the circumstances between *Walls* and the instant case, *Walls* is dispositive.[10] When Agent Ross

10. The district court stated that it was not departing from the mandatory minimum or the Sentencing Guidelines, but instead simply applying the appropriate penalties that would have applied absent the agent's manipulative conduct.

*Shepherd*, 857 F.Supp. at 111. Hence, we have no occasion to consider the impact, if any, of *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), on the conclusion

stated that he would buy only crack cocaine, Shepherd willingly, without hesitation, converted the powder cocaine into crack cocaine before completing the sale. Although the district court here, unlike the court in *Walls*, found that Shepherd was predisposed to sell powder cocaine, not crack cocaine, thereby constraining the magnitude of Binion's criminal responsibility, *Walls* requires the conclusion that the district court erred as a matter of law. *Walls* makes clear that in this circuit a request by a government agent for crack cocaine upon a seller's delivery of powder cocaine, without more, does not establish a claim of "sentencing entrapment." *Id.* at 1230.

Accordingly, we remand both cases to the district court, in Shepherd's case with instructions to vacate the judgment of conviction to allow her to enter a plea to the indictment and for resentencing, and in Binion's case for resentencing; for each appellant, the district court must determine the quantity of drugs attributable as a result of her or his participation in the conspiracy. *See United States v. Saro*, 24 F.3d 283, 288 (D.C.Cir.1994); *see also* U.S.S.G. § 1B1.3 application n.2.

in *Walls* with respect to the district court's authority to depart from the Sentencing Guidelines where there is a claim of manipulative conduct by a government agent.