**UNITED STATES of America,**
**Plaintiff/Respondent,**

v.

**Leroy HUDSON, Jr., Defendant/Movant.**

No. 98–40042–01–DES.

United States District Court,
D. Kansas.

March 8, 2001.

Leroy Hudson, Jr., El Reno, OK, pro se.

Thomas G. Luedke, Office of U.S. Atty., Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on movant's, Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. 45), movant's Motion to Amend 28 U.S.C. 2255 Motion (Doc. 48), and movant's motion for Evidentiary Hearing or, in the Alternative, Partial Summary Judgment (Doc. 52). The government has no objection to allowing Leroy Hudson ("Hudson") to amend his section 2255 motion to include one additional claim. The court finds good cause exists to grant Hudson's motion to amend, thereCAROL BUSER 943 NORTHRIDGE DR SEVEN FIELDS, PA 16046fore, Hudson's motion to amend is granted. For the following reasons, Hudson's amended motion for relief under section 2255 and motion for evidentiary hearing or summary judgment are denied.

## I. FACTUAL BACKGROUND

On February 2, 1998, a confidential informant ("CI") arranged for undercover agent Dave Hutchings to purchase crack from Hudson. Norman Quarles ("Quarles") arranged the purchase, which occurred at the CI's apartment in Polk Plaza. At 2:03 p.m., Agent Hutchings arrived at Polk Plaza, where he was met by the CI, Quarles, and Hudson. Quarles handed Agent Hutchings the crack, and the CI indicated they wanted $300 for it. Hudson suggested that he open the package. Agent Hutchings looked at the crack, and purchased 3.52 grams for $300. Quarles then requested that Agent Hutchings pay him $20 for setting up the deal, which Agent Hutchings paid.

Another cocaine purchase was arranged for March 30, 1998. Agent Hutchings was to purchase approximately one ounce of cocaine powder for $1,200.[1] Agent Hutchings said he would only purchase the cocaine if he could see who he was dealing with. At 3:15 p.m. Hudson, Quarles, and a female identified as Beverly Underwood ("Underwood") arrived at the CI's apartment. Hudson obtained a quantity of cocaine from Underwood, who was carrying it in her pocket. Agent Hutchings saw the cocaine was powder, and refused to buy the cocaine unless it was crack. Hudson directed Quarles to turn the powder into crack. Hudson said Agent Hutchings could have gotten a better deal on crack. Quarles proceeded to turn the powder co-

---

1. It is disputed whether the agent requested crack cocaine or powder cocaine. For the purposes of the section 2255 motion, the court will adopt Hudson's statement that the agent requested powder cocaine.

caine into crack. Hudson directed Quarles to cook up only a small amount at a time because it would turn out better. Hudson was paid $1,200 plus $50 for cracking up the cocaine. Hudson left, while Quarles continued to cook the crack, which ended up weighing 26.18 grams.

On April 8, 1998, another purchase of cocaine was arranged. At 5:29 p.m., Hudson, Underwood, and a juvenile named Marlando Johnson ("Johnson") arrived at the CI's apartment. Underwood went into the bathroom and emerged with 27 grams of powder cocaine. Agent Hutchings indicated he wished to buy crack, but did not need it all cooked. Hudson proceeded to cook a portion of the powder cocaine into crack. As Hudson was demonstrating, Agent Hutchings noticed Underwood dropped approximately nine packages of crack on the floor. Hudson sold 4.76 grams of crack and 21.91 grams of powder cocaine for $1,250. After Hudson, Underwood, and Johnson left the CI's apartment, they were arrested. The police found $1,250 on Hudson, nine rocks of crack (1.51 grams) on Underwood, and $500 on Johnson. On April 22, 1998, a grand jury returned a four count indictment against Hudson. Count 1 charged that commencing on or about February 2, 1998, and continuing through April 9, 1998, Hudson did knowingly combine, conspire, confederate and agree with Norman Quarles and other persons to possess with intent to distribute and to distribute in excess of 5 grams of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a) and 846. Counts 2 through 4 charged distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

On November 24, 1998, Hudson plead guilty to Count 1 of the indictment. That morning, prior to Hudson's plea, a sentencing information advising Hudson of a prior conviction and enhanced penalties was filed pursuant to 21 U.S.C. § 851. On July 19, 1999, Hudson was sentenced to 108 months imprisonment. The United States Probation Office calculated Hudson's guideline sentence range at 140 to 175 months. Hudson was sentenced to 108 months as the result of the government's motion for downward departure based on assistance provided by Hudson.

## II. DISCUSSION

Hudson raises four ineffective assistance of counsel claims in his amended section 2255 motion. Hudson alleges counsel was ineffective in that counsel failed to raise the following issues: A) Hudson's sentence was improperly enhanced because the government filed a prior conviction information under 21 U.S.C. § 851 using a July 27, 1977, state conviction; B) neither Hudson nor his attorney were served with a copy of the prior conviction information prior to the entry of a plea of guilty; C) Hudson improperly received a two level enhancement for being an "organizer, leader, manager, or supervisor" pursuant to U.S.S.G. § 3B1.1(c); and D) sentencing entrapment. The record before the court is sufficient to rule on these claims, therefore, an evidentiary hearing is not necessary.

The Sixth Amendment guarantees criminal defendants the right of effective assistance of counsel. *See generally Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, the petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense in that the outcome would have been different but for the deficiency. *Strickland,* 466 U.S. at

687, 104 S.Ct. 2052. In order to show "that counsel's performance was deficient," the petitioner must show that his attorney's conduct fell outside the wide range of competence demanded of an attorney in a criminal case. *See United States v. Carr,* 80 F.3d 413, 417 (10th Cir.1996). In order to show "that the deficient performance prejudiced his defense," the petitioner must show that there is a "reasonable probability that, but for the alleged errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Judicial scrutiny of counsel's performance starts with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

**A. Enhancement for Prior Conviction**

█ Hudson claims his July 27, 1977, state conviction was improperly used to enhance his sentence because state drug convictions sustained before October 12, 1984, cannot be used to enhance a sentence under 21 U.S.C. § 841. Under the 1970 Comprehensive Drug Abuse Prevention and Control Act, only convictions based on federal law could be used to enhance a federal sentence. In 1984, the Act was amended so that section 841 currently provides that federal sentences may be enhanced based on prior federal and state convictions. Hudson appears to argue that an enhancement based on his 1977 conviction should be governed by the 1970 Act rather than the 1984 modified Act.

This argument is without merit. In support of his argument, Hudson cites to *United States v. Gates,* 807 F.2d 1075, 1082 (D.C.Cir.1986), and *United States v. Johnson,* 506 F.2d 305, 307 (1974), however, both cases applied the pre-amendment version of section 841. *See United States v.*

*Beasley,* 12 F.3d 280, 284 (1st Cir.1993) (stating "until Congress amended § 841(b) specifically to allow sentence enhancements based on prior state law drug convictions, courts had held that the statute did not apply to those state drug convictions" and citing *Gates* and *Johnson* as examples of pre-amendment cases). The statute in effect at the time of the offense to which Hudson pled guilty and was sentenced in federal court provided for enhanced penalties for a defendant with one or more prior state felony narcotics convictions. 21 U.S.C. § 841(b). It was proper to use Hudson's 1977 state court conviction to enhance his sentence. *See United States v. Rolfe,* 997 F.2d 189 (6th Cir.1993) (1980 state conviction used to enhance sentence under section 841(b)(1)(B)); *United States v. Hansley,* 54 F.3d 709 (11th Cir. 1995) (1981 state conviction used to enhance sentence). Counsel was not ineffective for failing to raise a frivolous argument.

**B. Notice of Enhancement**

█ Hudson claims neither he nor his attorney were served a copy of the sentencing information providing notice that the government intended to use his prior conviction at sentencing. The law provides:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of the plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1).

The sentencing information was filed on November 24, 1998, at 8:41 a.m. The sen-

tencing information was accompanied by a certificate of service, which stated defense counsel was personally served prior to Hudson entering his guilty plea. Hudson plead guilty on November 24, 1998, at 9:30 a.m. Both the plea agreement and petition to enter a guilty plea reflect the enhanced sentence of a minimum of ten years based on a prior conviction pursuant to 21 U.S.C. § 841(b)(1)(B). Both Hudson and his attorney signed the plea agreement. Hudson signed the petition to enter a plea of guilty, and his attorney signed a certificate of counsel as to the petition. In addition, Hudson's attorney was aware of the prior conviction and contemplated its use at sentencing as early as October 22, 1998. An October 22, 1998, letter from Assistant United States Attorney, T.G. Luedke, to defense counsel provided: "Based on your representation that the defendant is in a criminal history category of five, his imprisonment range would be 120 months to 150 months." There is absolutely no factual basis to support Hudson's argument that the sentencing information was not provided to Hudson and counsel prior to entry of the guilty plea.

Hudson also argues that he was not given an opportunity to affirm or deny the previous conviction as required by 21 U.S.C. § 851(b). Section 851(b) provides:

> If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he was been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b). Hudson fails to recognize that section 851(e) limits the applica-

tion of section 851(b). Section 851(e) provides: "No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." The sentencing information was filed on November 24, 1998, and the date of the prior conviction was July 27, 1977. The prior conviction was entered more than five years before the sentencing information, therefore, Hudson could not challenge the prior conviction. Because section 851(e) bars Hudson's argument, the court did not error, nor was defense counsel ineffective for failing to raise this argument.

**C. Enhancement for Role in the Crimes**

 Hudson claims his sentence was improperly enhanced for his role as an "organizer, leader, manager, or supervisor" in criminal activity, pursuant to U.S.S.G. § 3B1.1(c). Hudson argues the plea agreement provided that the government would not recommend a two level enhancement for role in the offense and his counsel was ineffective for failing to file a notice of objection to the sentencing recommendation because Hudson's conduct was insufficient to justify an enhancement for his role in the offense.

First, Hudson's argument that the plea agreement called for the government to recommend that Hudson not receive the enhancement for his role in the offense is without merit. The October 22, 1998, letter provides: "The government would also agree to recommend that the defendant not receive a two point enhancement for role in the offence." The letter simply reflects the negotiation process, and it is not a plea agreement. The plea agreement signed by both defendant and counsel does not contain a provision requiring

that the government make a recommendation as to Hudson's role in the offense.

Second, Hudson has not shown that counsel was ineffective for failing to object to the role in the offense enhancement. Hudson has not shown that there is a "reasonable probability that, but for the alleged errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. If Hudson's sentence was not enhanced for his role in the crime, his guideline level would be reduced to twenty-seven. The imprisonment range, at a level twenty-seven, with a criminal history category of five, would have been 120 to 150 months. Hudson was sentenced to 108 months. Even if counsel had objected to the role in the offense enhancement, there is no reasonable likelihood that the result of the proceeding would have been different. Therefore, counsel was not ineffective.

### D. Sentencing Entrapment

Hudson argues counsel was ineffective in failing to raise a sentencing entrapment objection to his sentence because Agent Hutchings requested that the powder cocaine be turned into crack cocaine. Claims of sentencing entrapment are analyzed under the outrageous government conduct standard. *See United States v. Lacey*, 86 F.3d 956, 964 (10th Cir.), *cert. denied*, 519 U.S. 944, 117 S.Ct. 331, 136 L.Ed.2d 244 (1996). Outrageous conduct is "an extraordinary defense reserved for only the most egregious circumstances." *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir.1992). The relevant inquiry is whether, under the totality of the circumstances, the government's conduct is so shocking, outrageous and intolerable that it offends "the universal sense of justice." *Mosley*, 965 F.2d at 910 (quoting *United*

*States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)).

"It is not outrageous for the government to induce a defendant to continue criminal activity 'or even to induce him to expand or extend' previous criminal activity." *Lacey*, 86 F.3d at 965 (quoting *Mosley*, 965 F.2d at 911). The Tenth Circuit has condoned governmental actions that increase the severity of the defendant's punishment. The court held it is not outrageous for a government agent to suggest expansion of the crime by buying cocaine instead of marijuana. *See United States v. Pedraza*, 27 F.3d 1515, 1521–22 (10th Cir. 1994) (neither the informant's suggestion that parties smuggle cocaine instead of marijuana nor the government's heavy involvement in cocaine-smuggling plan rose to the level of outrageous conduct); *Mosley*, 965 F.2d at 913 (no outrageous conduct although defendant alleged price was coercively low, where agent suggested buying cocaine instead of marijuana and offered to front four additional ounces, when defendant approached agents, indicated he had dealt before, and accepted offer to buy). Likewise, the court held it is not outrageous for an agent to sell additional quantities of drugs beyond that necessary to secure arrest and conviction. *See Lacey*, 86 F.3d at 964–66.

An agent's request to cook cocaine powder is analogous to a request to sell a drug that carries a higher penalty or a request to sell a greater quantity of drugs. In all three situations, the government agent is merely extending the previous criminal activity, which the defendant is predisposed to commit. A government agent's request that powder cocaine be cooked into crack cocaine is an extension of previous criminal activity that does not rise to the level of outrageous government

conduct.[2]

Hudson relies on *United States v. Shepherd*, 857 F.Supp. 105 (D.D.C.1994), *vacated by* 102 F.3d 558 (D.C.Cir.1996), to support his position that the agent's conduct was outrageous. In *Shepherd*, the district court found that Shepherd was predisposed to distribute only powder cocaine and the government agent's request to cook the powder cocaine was outrageous conduct. Hudson fails to acknowledge that the circuit court vacated the district court's opinion. The circuit court held "a request by a government agent for crack cocaine upon a seller's delivery of powder cocaine, without more, does not establish a claim of 'sentencing entrapment.'" *Shepherd*, 102 F.3d at 567 (citing *United States v. Walls*, 70 F.3d 1323, 1330 (D.C.Cir. 1995)).

■■■ Defense counsel was not ineffective for failing to raise the issue of sentencing entrapment. Hudson claims, "had counsel merely researched the law, and took the time to investigate cases in that field of law (counsel claims that he read some cases regarding these concepts) counsel would have discovered this 1994 case *U.S. v. Shepherd supra,* which speaks to the heart of movant's allegations, and provides substantial law to support a claim." Clearly, counsel researched the law, which does not support a claim of sentencing entrapment. Agent Hutchings request that Hudson turn the powder into crack is not, by itself, sufficient to support a claim of sentencing entrapment, particularly where Hudson had demonstrated his predisposition to commit the crime by selling crack to Agent Hutchings in a previous

transaction. Agent Hutchings' conduct is not so shocking, outrageous and intolerable that it offends the universal sense of justice. *See Mosley,* 965 F.2d at 910.

Hudson has not demonstrated that counsel's representation fell below an objective standard of reasonableness or that the outcome would have been different if counsel had raised the sentencing entrapment defense. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Because counsel was not ineffective for failing to raise the sentencing entrapment defense, Hudson's argument that he is entitled to summary judgment is without merit. Therefore, the motion for summary judgment is denied.

**IT IS THEREFORE BY THE COURT ORDERED** that Movant's Motion to Amend 28 U.S.C. 2255 Motion (Doc. 48) is granted. Movant's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. 45), as amended, is denied. Movant's motion for Evidentiary Hearing or, in the Alternative, Partial Summary Judgment (Doc. 52) is denied.

---

**2.** The court notes that the Tenth Circuit rejected Hudson's sentencing entrapment argument in the unpublished opinion *United States v. Quarles*, No.99–3007, 1999 WL 999738, at *3 (10th Cir. Nov.4, 1999), which involved the man Hudson directed to cook the powder cocaine. The court stated, "Quarles' conten-

tion that he should not be accountable for the 26.32 grams because it was the result of sentence manipulation through outrageous government conduct is without merit. Quarles willingly converted the powder cocaine when then delivered to Agent Hutchings." *Id.*