In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3509

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEMILOUS E. KELLY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 316-2—**Suzanne B. Conlon**, *Judge.*

ARGUED OCTOBER 2, 2002—DECIDED DECEMBER 5, 2002

Before BAUER, EASTERBROOK, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* Demilous Kelly challenges the district court's refusal to accept his midtrial guilty pleas on two counts of distribution of crack. *See* 21 U.S.C. § 841(a). As a result of the refusal, Kelly's case went to a jury, which ultimately found him guilty on the distribution counts as well as one count of conspiring to distribute crack. *See* 21 U.S.C. § 846. We affirm Kelly's convictions because the rejection of the guilty pleas did not amount to an abuse of discretion.

After being charged with one count of conspiring to distribute crack and three counts of distributing crack, Kelly

on four occasions appeared before the district court to plead guilty to the conspiracy count in accordance with a plea agreement reached with the government. Each attempt failed because Kelly refused to admit guilt or expressed doubts about pleading guilty because he disagreed with the government's conspiracy allegations. At the end of the first day of trial, the judge suggested that guilty pleas to the distribution counts might be less "problematic" because Kelly had admitted to that conduct all along. Accordingly, the parties renegotiated the plea agreement, and the district court dismissed one distribution count on the government's motion.

It is unclear how much time Kelly spent with counsel after the renegotiation of the plea agreement. Kelly was returned to jail while his counsel discussed the new agreement with the government, and he was brought to court early the following morning at the judge's request. That morning Kelly agreed to plead guilty to the distribution counts, but advised that he had not been given enough time to speak with his attorney:

THE COURT:   [T]here certainly is an evidentiary basis for a guilty plea on Counts 3 and 4, in my opinion.

But I want to make sure that that is agreeable to you, Mr. Kelly, with respect to Counts 3 and 4 that charge you with actually delivering cocaine to the undercover agent on two occasions that we saw yesterday in the videotape. Are you agreeable to pleading guilty to those counts?

DEFENDANT:   Yes.

THE COURT:   Let me go through them specifically with you. . . . Have you actually read those two counts?

DEFENDANT: No.

THE COURT: You have not? Mr. Greene [defense counsel], have you gone through the allegations in Counts 3 and 4 with Mr. Kelly?

MR. GREENE: I certainly have, Judge, numerous times, the whole indictment.

THE COURT: All right, we just need to focus on Counts 3 and 4 at this point.

In your professional judgment, Mr. Greene, does Mr. Kelly understand the allegations made against him in Counts 3 and 4?

MR. GREENE: He certainly understands them, Judge, that's correct.

THE COURT: Now, Mr. Kelly, do you feel that you've had enough time to discuss your decision to plead guilty with Mr. Greene?

DEFENDANT: Ah . . .

THE COURT: I'm sorry, I can't hear you.

DEFENDANT: Not really. To be honest with you, no.

THE COURT: Okay. Well, I have a motion call at 9:00 o'clock. So you can discuss this further in the lockup.

After the judge conducted the motion call, she brought the jury into the courtroom and continued with Kelly's trial. Aware of the jury's presence, defense counsel offered a veiled reminder of the guilty pleas: "We had a conversation earlier, I would like to maybe continue that." The judge did not respond.

The only further evidence that the prosecution offered that morning before resting was one stipulation and two

exhibits. The judge then removed the jury from the courtroom and explained that she was rejecting Kelly's guilty pleas:

THE COURT: I'm at a loss. I mean, I've made myself available and my staff available and kept others waiting significant periods of time to take a plea. And at this juncture the government has rested. I'm going to ask whether or not you wish to put on a case and whether or not your client wishes to testify.

MR. GREENE: Does that mean you won't give him an opportunity to plead guilty in this case, Judge?

THE COURT: I think I've given him lots of opportunities, Mr. Greene.

MR. GREENE: Judge, he wants to plead guilty. Could you ask him one more time, Judge?

THE COURT: It's not a matter of just pleading guilty, Mr. Greene.

Do you wish to put on a defense?

MR. GREENE: Is that a no, then, Judge?

THE COURT: It's a no.

After the judge refused to allow Kelly to plead guilty, defense counsel rested, and the jury found Kelly guilty on all charges. The judge later sentenced Kelly to 211 months' imprisonment to be followed by 5 years of supervised release.

Kelly offers two arguments on appeal. First, he contends that the district court abused its discretion in rejecting his guilty pleas on the distribution counts. Second, Kelly argues that the district court violated his Sixth Amendment right

to counsel by refusing to resume the guilty plea proceeding after he spoke with counsel.

A defendant has no absolute right to have a court accept his guilty plea, and a court "may reject a plea in [the] exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971); *United States v. Greener*, 979 F.2d 517, 519 (7th Cir. 1992). Nevertheless, a court cannot act arbitrarily in rejecting a plea, *United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998); *accord United States v. Maddox*, 48 F.3d 555, 558 (D.C. Cir. 1995) (collecting cases), and must articulate on the record a "sound reason" for the rejection, *Kraus*, 137 F.3d at 453.

With that standard in mind, Kelly first argues that the trial judge failed to provide a sound reason for the rejection of his pleas. The reasons the judge articulated when refusing the pleas were that she had given Kelly "lots of opportunities" to plead guilty, that the government had already rested, and that she had made herself and her staff available for "significant periods" so that he could plead guilty.

The judge's reasons for rejecting the pleas are sufficiently sound. Most significantly, Kelly's plea attempt on the distribution counts occurred very close to the end of the trial. Substantial judicial resources had already been spent on the trial and on Kelly's prior unsuccessful plea attempts. *See United States v. Shepherd*, 102 F.3d 558, 562 (D.C. Cir. 1997) (lateness of defendant's request to plead guilty is a proper factor to consider in rejecting plea). Additionally, in light of counsel's assurance that he had reviewed the indictment with Kelly numerous times and in light of Kelly's four prior aborted plea attempts, the judge reasonably interpreted Kelly's remarks during the plea colloquy as an indication that he did not want to plead guilty and that he was wasting the court's time. *See Kraus*, 137 F.3d at 453 (emphasizing the district court's responsibility to ensure

that the defendant's plea is "voluntary and knowing"). Because the judge articulated a sound reason for the rejection, she did not abuse her discretion in rejecting Kelly's guilty pleas.

Lastly, Kelly's argument that the district court violated his Sixth Amendment right to counsel has no merit. Kelly contends that he was entitled to the assistance of counsel during his plea hearing, *see Santobello*, 404 U.S. at 261, and that the judge punished him for exercising that right before continuing with the colloquy. The flaw in Kelly's argument is that the judge's refusal to continue the colloquy had nothing to do with Kelly's consultation with counsel. Rather, it appears that the judge interpreted Kelly's comments during the colloquy to indicate that he did not truly want to admit factual guilt and that he was merely wasting the court's time. Even if that interpretation was unreasonable, it does not implicate Kelly's Sixth Amendment right to counsel.

AFFIRMED.

ROVNER, *Circuit Judge*, dissenting. I respectfully dissent because it is my view that the district court abused its discretion by mischaracterizing the record in explaining its reasons for rejecting Kelly's guilty pleas. First, the judge explained that she gave Kelly "lots of opportunities" to plead guilty, but Kelly attempted only once to plead guilty to the distribution counts. During that attempt, Kelly did not refuse to plead guilty as the judge indicated at sentencing. Instead, when asked whether he was agreeable to pleading guilty, Kelly quite clearly responded, "yes." *See United States v. Maddox*, 48 F.3d 555, 560 (D.C. Cir. 1995) (district court abused its discretion in rejecting guilty plea based solely on defendant's denial of factual guilt during

previous plea colloquy). *Cf. Neal v. Grammar*, 975 F.2d 463, 466 (8th Cir. 1992) (affirming guilty plea because even though defendant initially denied factual guilt, he later admitted guilt). Kelly's only hesitation was that he believed that he needed more time to review the distribution charges with his attorney—a reasonable request because the plea agreement had changed overnight and because Kelly had been brought before the judge early that morning with little time to discuss the new agreement with his attorney. Moreover, it was unlikely that Kelly would balk at pleading guilty to the distribution counts because he had already admitted to the underlying conduct, and the judge herself suggested that pleas to those counts might be less "problematic."

The district court also mischaracterized the record when explaining that it rejected the pleas because the government had already rested. The government had not yet rested when Kelly began the plea colloquy on the distribution counts, and had the court not ignored counsel's request to continue their "conversation," Kelly could have entered his pleas before the government rested. Granted, very little remained in the government's case when Kelly began his colloquy, but the judge's remark that Kelly should "discuss this further in the lockup" suggested that the timing of the pleas was not a problem and that Kelly could continue the colloquy after the judge's motion call. Thus, because the judge's reasons for rejecting Kelly's pleas were based on mischaracterizations of the record, I do not believe that they were sufficiently sound. *See United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998).

The government argues that any conceivable error in rejecting the guilty pleas must be deemed harmless because Kelly's only tangible benefit of pleading guilty would be the prospect of an offense-level reduction for acceptance of responsibility, and such a prospect was slim at best. The government also argues that a reversal would be "pointless"

as Kelly already received a fair trial. Those arguments miss the mark. First, the possibility of a reduced sentence based on acceptance of responsibility constitutes sufficient prejudice to Kelly. *See United States v. Shepherd*, 102 F.3d 558, 563 (D.C. Cir. 1997). And even if such prejudice is not sufficient, an additional conviction is clearly prejudicial. *Ball v. United States*, 470 U.S. 856, 865 (1985); *Shepherd*, 102 F.3d at 563; *Maddox*, 48 F.3d at 560; *United States v. Delegal*, 678 F.2d 47, 52 (7th Cir. 1982). The government's other argument is circular—Kelly is not complaining that his trial was unfair; he is complaining that he incurred an additional conviction because he was not permitted to plead guilty.

Thus, because the district court abused its discretion in rejecting Kelly's guilty pleas and because Kelly was prejudiced by the rejection, I would remand the case with instructions to permit Kelly to plead guilty and to vacate the jury verdicts.

A true Copy:

       Teste:

 

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*