**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Rodney DELEGAL, Defendant-Appellant.**

No. 81–1956.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1982.

Decided May 14, 1982.

Robert J. Kopecky, Kirkland & Ellis, Chicago, Ill., for defendant-appellant.

Douglas B. Altman, Asst. U. S. Atty., Hammond, Ill., for plaintiff-appellee.

Before SWYGERT, Senior Circuit Judge, CUDAHY, Circuit Judge, and SHADUR,* District Judge.

SHADUR, District Judge.

Rodney F. Delegal ("Delegal") appeals from his conviction for bank robbery and interstate transportation of a stolen vehicle. We reverse that conviction because the district court erred in "withdrawing"[1] Delegal's guilty plea to the first charge (under the plea agreement the government was committed to move for dismissal of the second charge at the time of sentencing).[2]

### Proceedings Below

On January 6, 1981[3] Delegal was charged in a two-count indictment with (1) bank robbery with jeopardy of life in violation of 18 U.S.C. §§ 2113(a) and (d) and (2) interstate transportation of a stolen vehicle in violation of 18 U.S.C. § 2312. Delegal was arraigned January 8 and entered a not guilty plea. Trial was set for February 23.

On February 13 Delegal's court-appointed counsel filed a motion for change of plea. At the February 19 hearing on that motion a plea agreement signed by the government, Delegal and his counsel was tendered to the district court. Its substantive terms were simple:

"(a) The defendant will plead GUILTY to COUNT I of the indictment.

"(b) The United States will dismiss COUNT II of the indictment at the time of the sentencing.

"(c) The United States will remain silent at the time of sentencing."

In addition the agreement stated that "no promises have been made to [defendant] other than those contained in this petition." In accordance with Fed.R.Crim.P. ("Rule") 11, the district court determined that (1) Delegal fully understood the plea and had entered into it voluntarily and (2) there was a sufficient factual basis for the plea. Accordingly the district court accepted the plea as to Count I and set the matter for sentencing.

Four days later (on February 23) Delegal's attorney wrote the Assistant United States Attorney handling the case about the possibility of Delegal serving federal time concurrently with time due under a prior state court conviction in Florida. On February 27 government counsel responded:

When you called and informed me that Mr. Delegal would take the offer that is set out in the petition to enter a change of plea, you asked me about the possibility of your client doing any time in the Florida prisons. I indicated I did not know if that was possible and asked if that was a condition of the agreement. Your response was that it was not.

\* \* \* \* \* \*

It appears from your letter that you consider a transfer to the State Prison System to be a condition of your client's plea and that it should have been in the petition. I also assume from your letter that your client believed that to be a part of the agreement.

---

\* Honorable Milton I. Shadur, District Judge for the Northern District of Illinois, is sitting by designation.

1. Of course in technical terms only the defendant can "withdraw" his own plea, while the district court has the right to accept or reject a tendered plea (see Fed.R.Crim.P. 11(e)(2)). For convenience and because the district court ordered that the guilty plea be withdrawn, we will follow the locution in the text.

2. Because of our decision restoring the withdrawn guilty plea, we need not and do not address Delegal's alternative arguments asserting violation of the Speedy Trial Act and ineffective assistance of counsel.

3. All relevant dates occurred in 1981.

On that assumption the government then filed a motion under Rule 11 requesting a further hearing on Delegal's plea.

On March 2 Delegal's attorney replied by letter to the Assistant United States Attorney that he did not consider the possibility of Delegal serving time in a Florida prison to be part of the plea agreement. Nonetheless the district court properly held a hearing March 9 to determine whether a part of the plea agreement had not been reflected in the written document. During that hearing the district court asked Delegal three times whether he thought any promise concerning serving time in Florida was a part of the plea agreement:

> The Court: Mr. Delegal, we will hear from you whatever you want to present in regard to what we are discussing now.
>
> Defendant: The only thing was, Your Honor, I thought that it was going to be left up to you whether or not I was transferred back to the State of Florida for the time I had. (Tr. 6)

\*   \*   \*   \*   \*   \*

> The Court: Did you understand that there was a promise of a commitment from either the government or from this Court that any sentence you receive would be served in Florida, or served in Florida concurrently, that is at the same time, as your federal sentence? Am I making myself clear?
>
> Let me restate it. Did you believe, when you entered into this plea agreement, that part of the deal, part of the package was that whatever time might be imposed upon you, the sentence of this Court would run at the same time as the time you still had to spend in Florida?
>
> Defendant: Yes, sir, that is what I thought.
>
> The Court: And you thought that was one of the conditions of the agreement?
>
> Defendant: Yes, sir. (Tr. 6–7)

\*   \*   \*   \*   \*   \*

The Court: Well, let's face it. What he is saying is his understanding is just as crucial as the provisions regarding a specific sentence. It is extremely crucial if that was his understanding. I can only state that I wish on February 19, when I was delving into this matter, that someone had called it to my attention. As you know, and as the transcript of that change of plea proceeding will reflect, it was not called to my attention. Nevertheless it has now been called to my attention, and I understand what Mr. Delegal is now telling me was his understanding.

So is there anything you wanted to add to that, Mr. Delegal?

Defendant: No, sir. I was just confused. I didn't know how it was going to go. I thought it was going to be left up to you whether I was transferred to Florida or not.

The Court: Well then you didn't understand it was an absolute condition?

Defendant: No, sir.

The Court: You understood that it was going to be left to the Court whether that occurred?

Defendant: Yes, sir.

The Court: And it would be, just as your sentence would be, up to the Court whether you served it concurrently, that is at the same time, as your additional time to be served in Florida, or whether it is tacked on at the end, you thought it was left up to my judgment?

Defendant: Yes, sir. (Tr. 7–8)

At the end of that hearing the district court vacated the guilty plea and reset a trial date. At the same time the court told both sides that the understandings clearly expressed by the end of the hearing would serve as the basis for a revised written plea agreement, incorporating a reference to the possible serving of time in Florida but making plain that such service was not a condition of the plea.[4]

---

4. As the court put it at the end of the hearing (Tr. 11), "Now there is your package, Mr. Mur- phy [the Assistant United States Attorney]."

Delegal's case was then transferred to another district judge, who was unaware of what had transpired at the Rule 11 proceedings. Delegal's counsel failed to pursue the recasting of the written plea agreement. Delegal was tried and convicted on both Counts I and II. Delegal now contends the first district judge improperly ordered his guilty plea withdrawn.

*Principles and Application of Rule 11(e)*

■ Rule 11(e)(4) provides:

*Rejection of a Plea Agreement.* If the court rejects the plea agreement the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.[5]

While a defendant has no absolute right to have a guilty plea accepted, a court must exercise sound discretion in determining whether or not to reject a plea. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1972). Thus a defendant is entitled to plead guilty unless the district court can articulate a sound reason for rejecting the plea. *United States v. Davis*, 516 F.2d 574, 578 (7th Cir. 1975).

Delegal unquestionably wanted to plead guilty to Count I alone, and he entered into

the plea agreement knowingly and voluntarily. There is equally no question that the district court found the substantive terms of the plea agreement acceptable, but rejected the plea only because the court thought there was confusion as to one aspect of the written agreement.

Rule 11(e) speaks throughout of a "plea agreement." When questions are presented as to the *content* of a plea agreement, it is not simplistic to expect that ordinary principles of offer and acceptance will govern. As with any other "agreement," the government should be disabled from withdrawing once there has been a plain "meeting of the minds."[6]

■ But there is no occasion to import notions that all the terms of the agreement must be embodied in an integrated writing (a plea-agreement parol evidence rule) or indeed that the agreement must be in writing at all (a plea-agreement Statute of Frauds). After all every aspect of court proceedings is reported and preserved so there can be no dispute about what was said. Under the circumstances, then, the public policies served by the parol evidence rule (that oral understandings cannot vary integrated—and presumably all-inclusive—written understandings) and the Statute of Frauds (that it is too easy to fabricate certain kinds of agreements) are not at all implicated in the situation the trial court dealt with and we consider here.[7]

If the properly applicable offer-and-acceptance concepts are kept in view this case presents no real difficulties. There is really

---

**5.** Although no provision of Rule 11 deals literally with a court's "withdrawal" of a guilty plea, the standard is clearly the same as for initial rejection.

**6.** As all the standard contract texts reflect, this use of "meeting of the minds" probably overstates the burden of the party seeking to enforce the agreement (Delegal in this case). 1 *Williston on Contracts* § 21 at 42 (3d ed.); 1 *Corbin on Contracts* § 106. Where as here the agreement was so clearly breached, the party opposing enforcement (here the government) cannot complain of a standard expressed in *too* rigorous terms.

**7.** We do not mean to imply that plea agreements should not ordinarily be reduced to written form. Even a transcript from an oral hearing can generate confusion a writing can avoid. And the opportunity to consider substantive terms as they look on paper, in the studied environment of a pre-hearing conference between defendant and counsel, is preferable to an attempt to evaluate newly-negotiated terms in the context of a court appearance. But if the parties have clearly reached an agreement, a plea should not be rejected simply because it is reflected in a transcript rather than a writing. Indeed Rule 11 itself makes no mention of the need for a writing.

no question that Delegal (and his counsel) and the government had a deal when the written plea agreement was reached before the parties ever came to court. Any question in that respect was injected by Delegal's lawyer *after* the plea had been accepted by the district court and the case set for sentencing. When the Assistant United States Attorney responded that the agreement had *not* been conditioned on service of time in Florida, Delegal's lawyer promptly replied confirming the absence of any such condition.

▇ As for Delegal himself—the person whose understanding was critical—his very first response to the district court's inquiry expressed in his own words that he recognized the sentencing decision was solely that of the district court. When the inquiry was pursued Delegal (possibly confused by the complex nature of the question) expressed a different thought, but by the end of the exchange between court and defendant Delegal again reconfirmed in no uncertain terms the understanding he had first articulated. Then, if there were any conceivable confusion remaining over the possibility of Delegal's serving a concurrent sentence in Florida, it was fully dispelled at the end of the hearing (Tr. 9–11):

> Mr. Murphy: Your Honor, that may be his impression but it was not my impression. It was not my understanding that the United States was going to make any representations to the Court whatsoever. I think, in fact, the petition in case calls for the United States to remain silent, if I recall correctly, at the time of sentencing.
>
> The Court: That is correct.
>
> Mr. Murphy: And we are going to say nothing.
>
> The Court: Well, what is the government's position on this now, what is the government's position on what Mr. Delegal wants? He wants a provision in here that the government will agree that the court continue—
>
> Now you understand, Mr. Delegal, that this would in no way bind the court. I might find at that time that it should not run at the same time as your Florida sentence.
>
> Defendant: Yes, sir.
>
> The Court: Do you understand that?
>
> Defendant: Yes, sir.
>
> The Court: Or I might find that it should run at the same time as your Florida sentence. Do you understand that?
>
> Defendant: Yes, sir.
>
> The Court: So you really don't know what I might do on the day of the sentencing, isn't that right?
>
> Defendant: No, sir, I don't.
>
> The Court: And no promises have been made to you on behalf of the court as to what I will do?
>
> Defendant: No, sir.
>
> The Court: Am I correct?
>
> Defendant: Yes, sir.
>
> The Court: Now there is your package, Mr. Murphy.

There had been no condition placed in the written plea agreement because there was in fact no condition to which the plea was subject. Whatever doubt may have been raised by intervening events was erased by the final dialogue between the district court and Delegal. Everyone—Delegal, his counsel, the United States and the court—understood the clear terms of the plea agreement. Essentially the district court "withdrew" the guilty plea only because he thought that understood agreement should be reflected in a written document. But because the record of the court reporter served that very same function there was no basis for the withdrawal of the plea.

Unfortunately the mechanics of reassignment of the case to another judge (unaware of what had transpired) for trial, coupled with the unexplained failure of Delegal's counsel to follow up on what everyone had contemplated at the second Rule 11 hearing, operated to Delegal's serious detriment. We find that, though moved by an understandable desire to regularize the plea by a revised written agreement, under the circumstances the sentencing court abused its discretion in withdrawing the guilty plea.

Finally the government contends that Delegal was not prejudiced by the withdrawal of the plea agreement. That argument is baseless. After all Delegal was eventually convicted on two counts, while he had pleaded guilty to only one (with the government committed to move for dismissal of the other). We need not speculate on what sentence Delegal might have received on his guilty plea to Count I alone. That matter is best left to the trial court.

### Conclusion

Delegal's conviction is reversed. This action is remanded to the district court, with instructions (1) to accept Delegal's guilty plea on the terms expressed by the written plea agreement, as supplemented and reconfirmed by the March 9 hearing, (2) to sentence Delegal on Count I in accordance with that agreement and (3) to act on the government's motion for dismissal of Count II at the time of sentencing.