**UNITED STATES of America, Appellee,**

v.

**Danny MADDOX, Appellant.**

**UNITED STATES of America, Appellee,**

y.

**Norman L. ROBINSON, Jr., Appellant.**

**Nos. 93–3172, 93–3178.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 19, 1995.

Decided March 7, 1995.

Rehearing Denied in No. 93–3172 May 12, 1995.

---

Tracy A. Thomas, appointed by this Court, argued the cause, for appellant Maddox. With her on the briefs was Carol E. Bruce.

David P. Sutton argued the cause and filed the briefs, for appellant Robinson.

Timothy J. Heaphy, Asst. U.S. Atty., argued the cause, for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys.

Before: EDWARDS, Chief Judge, WALD and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Appellants Danny Maddox and Norman L. Robinson challenge their convictions on a variety of drug-related charges stemming from their participation in a series of drug transactions with a police informant in 1992. Officers of the federal Drug Enforcement Administration ("DEA") arrested Maddox as he attempted to sell crack cocaine to the informant for the third time, and later arrested Robinson for supplying crack cocaine to Maddox. After a five-day trial, a jury convicted both men of conspiracy to distribute crack cocaine, distributing crack cocaine, and aiding and abetting the distribution offenses. The jury also convicted Maddox of possession of crack cocaine with intent to distribute, and ordered both appellants to forfeit $3500 in cash as the proceeds of their drug activity, along with two automobiles used to facilitate that activity.

Although appellants raise a number of issues on appeal, we need not address most of them because we agree with appellants that the District Court erred in rejecting their guilty pleas. Appellants twice sought to plead guilty prior to trial. The District Court rejected their first attempt after Maddox, in responding to questions posed by the trial judge, appeared to deny factual guilt of the relevant crime. Because the Government conditioned Robinson's plea agreement on the successful entry of Maddox's plea, the District Court's rejection of Maddox's guilty plea effectively precluded Robinson from pleading guilty. Subsequently, in the wake of this aborted plea proceeding, Maddox sent a letter to the District Court explaining that he misunderstood the judge's questions and still wished to plead guilty. The District Court rejected Maddox's renewed plea based solely on doubts about the voluntariness of the plea in view of the court's earlier colloquy with the defendant.

■ We hold that the District Court abused its discretion in rejecting Maddox's guilty plea the second time it was offered. While district courts must exercise discretion in deciding whether to accept or reject a guilty plea, that discretion is not unfettered. On the record before us, the trial judge was free in the first instance to reject Maddox's plea, because the appellant appeared reticent and seemed to deny guilt. But Maddox's subsequent explanation for his actions obligated the court to reconsider his plea when it was offered again. Instead, the District Court summarily rejected the renewed plea *based solely on the judge's earlier observations of Maddox.* Accordingly, we remand

the case to the District Court with instructions to conduct new plea proceedings. If the pleas offered are satisfactory, the original plea agreements between the appellants and the Government should be accepted and the verdicts rendered by the jury should be vitiated.

## I. BACKGROUND

Maddox and Robinson twice sold crack cocaine to a DEA informant during March and April of 1992. On each occasion, Maddox acted as an intermediary, arranging for Robinson to supply the drugs involved in the transaction. On July 30, 1992, Maddox again agreed to sell crack cocaine to the informant. Although Robinson was not present during this transaction, Maddox told the informant that Robinson had supplied the drugs to be sold. DEA agents arrested Maddox before the final transaction was completed, and later arrested Robinson.

On December 15, 1992, a grand jury indicted appellants on one charge of conspiring to distribute cocaine base, in violation of 21 U.S.C. § 846 (1988), and two charges of distributing and aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(B)(iii) (1988) and 18 U.S.C. § 2 (1988). In addition, the grand jury charged Maddox with two counts of unlawfully using a communication facility to facilitate the distribution of cocaine base, in violation of 21 U.S.C. § 843(b) (1988), and one count of possessing 50 grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Finally, the indictment sought the criminal forfeiture of $3500 representing the alleged proceeds of appellants' drug activity, and two automobiles claimed to facilitate that activity, pursuant to 21 U.S.C. § 853 (1988).

On June 14, 1993, after a trial jury had been selected, lawyers for Maddox and Robinson informed the District Court that both defendants had reached plea agreements with the Government. Maddox's agreement called for him to plead guilty to the conspiracy charge and to plead no contest to the criminal forfeiture of his automobile. Robinson's agreement required him to plead guilty to a lesser conspiracy offense under 18 U.S.C. § 371 (1988) and to submit to the criminal forfeitures of $3500 and his automobile. The Government conditioned its agreement with Robinson on the successful entry of a guilty plea by Maddox. Specifically, the agreement provided that if Maddox decided to proceed to trial or withdraw his plea, Robinson's plea agreement would be nullified unless Robinson agreed to testify against Maddox at trial. In exchange for appellants' guilty pleas, the agreements obligated the Government to request the dismissal of all other charges. Relying on the plea agreements, the District Court dismissed the jury.

When Maddox proffered his guilty plea to the District Court the next day, the following colloquy occurred:

> THE COURT: Mr. Maddox, step forward, please. Are you prepared to plead guilty this morning to conspiracy and to forfeiture of the automobile?
>
> THE DEFENDANT: Yes.
>
> [MADDOX'S COUNSEL]: The judge is talking to you.
>
> THE COURT: Are you prepared to do that or not? I sense from your attitude—
>
> THE DEFENDANT: Yeah.
>
> THE COURT: —that you're not prepared to do that.
>
> THE DEFENDANT: I said yes.
>
> THE COURT: Are you guilty of conspiring to commit the offense of distributing cocaine base or crack? Did you do that?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. Go back.

Hearing Tr. (June 15, 1993) at 4–5, *reprinted in* Appendix for Appellant Danny Maddox ("App.") 51–52. The District Court judge then ordered the case set for trial, stating that there was "no point in going further with Mr. Robinson since they are co-defendants." *Id.* at 5, *reprinted in* App. 52. Finally, the judge said, "I don't want anybody to come back and say that the defendant has changed his mind because that would indicate to me that there was pressure on him to give up his right to a trial. So we are going to go to trial in this case." *Id.* at 6, *reprinted in* App. 53.

Despite the trial judge's admonition, Maddox's counsel sent the District Court a letter on June 18, 1993, explaining that Maddox's behavior during the June 15 colloquy resulted from confusion about the judge's questions, not from any desire to withdraw from his plea agreement. The letter stated that Maddox's denial of guilt reflected his mistaken belief that the judge was asking him whether he had, in fact, distributed cocaine, instead of whether he had aided and abetted the distribution or conspired to do so. The letter concluded by requesting "that the Court grant defendant a second opportunity to enter a guilty plea in this case." Letter from Arthur M. Reynolds to the District Court of 6/18/93, at 3, *reprinted in* App. 30. The District Court judge rejected this request on the first day of jury selection for appellants' trial, June 21, 1993, stating that he was "not convinced that any guilty plea entered today, in view of the circumstances and the events of last week, would be voluntary." Trial Tr. (June 21, 1993) at 4, *reprinted in* App. 56.

The District Court then conducted a five-day trial, at the conclusion of which the jury convicted Maddox and Robinson of all remaining charges in the indictment and imposed the criminal forfeiture requested by the Government.[1] On September 13, 1993, the District Court sentenced Maddox to 121 months in prison, five years of supervised release, and a $200 special assessment. On September 24, 1993, the District Court sentenced Robinson to 120 months in prison, five years of supervised release, and a special assessment of $150. The District Court further ordered appellants to forfeit $3500 and their automobiles.

## II. ANALYSIS

Both appellants challenge the District Court's rejection of their guilty pleas. Appellants first contend that the District Court erred by rejecting Maddox's initial guilty plea. They rely on circuit precedent that bars a District Court from rejecting a guilty plea based solely on a defendant's refusal to admit factual guilt of a crime. In addition, they claim the District Court erred by failing to reconsider Maddox's plea the second time it was offered. We reject appellants' first contention but agree with the second.

▪ Although plea bargaining is "an essential component of the administration of justice," defendants have "no absolute right to have a guilty plea accepted." *Santobello v. New York,* 404 U.S. 257, 260, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Instead, the Supreme Court has made clear that "[a] court may reject a plea in exercise of sound judicial discretion." *Id.* at 262, 92 S.Ct. at 498; *accord United States v. Washington,* 969 F.2d 1073, 1077 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993). However, as the Sixth Circuit has stated, "[b]y leaving the decision whether to accept or reject a plea to the exercise of sound judicial discretion, the Supreme Court did not intend to allow district courts to reject pleas on an arbitrary basis." *United States v. Moore,* 916 F.2d 1131, 1136 (6th Cir.1990) (internal quotations and citation omitted). Rather, the rule in this circuit and others is that "the trial judge must provide a reasoned exercise of discretion in order to justify a departure from the course agreed on by the prosecution and defense." *United States v. Ammidown,* 497 F.2d 615, 622 (D.C.Cir.1973); *accord United States v. Robertson,* 45 F.3d 1423, 1438 (10th Cir.1995) (requiring district courts to "set forth, on the record, the prosecution's reasons for framing the bargain and the court's justification for rejecting it"); *United States v. Miller,* 722 F.2d 562, 566 (9th Cir.1983) (same); *see also Moore,* 916 F.2d at 1135–36 ("[A] defendant is entitled to plead guilty unless the district court can articulate a sound reason for rejecting the plea." (quoting *United States v. Delegal,* 678 F.2d 47, 50 (7th Cir.1982)).

Applying that rule here, we hold that the District Court permissibly rejected Maddox's guilty plea when it first was offered. Appellants point out that the District Court ended its colloquy with Maddox immediately after Maddox denied factual guilt of the conspiracy

---

1. At the close of the Government's case, the District Court dismissed the two counts of the indictment charging Maddox with unlawfully using a communication facility to facilitate the distribution of crack cocaine.

charge. Thus, they claim that the District Court ignored circuit precedent holding that "the trial judge errs in insisting on trial merely because the defendant refuses to accompany his plea to lesser charges with an admission of the guilt indicated by the other evidence presented to the court." *United States v. Gaskins*, 485 F.2d 1046, 1049 (D.C.Cir.1973). In their haste to invoke the *Gaskins* rule, however, appellants mischaracterize the District Court's decision.

■ Contrary to appellants' contention, the record of proceedings before the District Court demonstrates that the trial judge rejected Maddox's initial plea not merely because of his denial of factual guilt, but also because of doubts about the voluntariness of his plea. Rule 11 of the Federal Rules of Criminal Procedure, which governs guilty plea proceedings, bars a district court from accepting a guilty plea without first ascertaining that it is voluntary. *See* FED. R.CRIM.P. 11(d); *see also Washington*, 969 F.2d at 1078 ("The final element necessary to enter a valid plea of guilty is that the plea be voluntary and knowing."). Here, Maddox's demeanor during his colloquy with the District Court indicated that he may have had reservations about pleading guilty. Although the printed transcript generally casts only a dim light on a defendant's demeanor, in this case the trial judge put his opinion of the defendant's conduct on the record, telling Maddox that, "I sense from your attitude ... that you're not prepared to [plead guilty]." Hearing Tr. (June 15, 1993) at 4–5, *reprinted in* App. 51–52. The fact that Maddox's own counsel was required to admonish Maddox that "[t]he judge is talking to you," *id.* at 4, *reprinted in* App. 51, further suggests that the defendant was not fully engaged in the colloquy. Indeed, Maddox's counsel acknowledged in his subsequent letter to the trial judge that, "[a]s a result of defendant's

attitude and demeanor, the Court was concerned, *and with extreme justification,* with the voluntariness of the guilty plea defendant was tendering." Letter from Arthur M. Reynolds to the District Court of 6/18/93, at 2 (emphasis added), *reprinted in* App. 29. Finally, when the District Court again addressed Maddox's guilty plea the next week, he rejected it with the explanation that he was "not convinced that any guilty plea entered today, in view of the circumstances and the events of last week, *would be voluntary.*" Trial Tr. (June 21, 1993) at 4 (emphasis added), *reprinted in* App. 56. Thus, Maddox's denial of factual guilt did not stand alone, but rather formed part of a pattern of conduct suggesting that his plea failed to satisfy Rule 11's voluntariness requirement. While the District Court ideally might have inquired further to ascertain the reason for Maddox's reticence,[2] we think the record adequately reflects that the trial judge reasonably exercised his discretion in rejecting Maddox's *initial* guilty plea.

■ However, we cannot reach the same conclusion with respect to the District Court's subsequent rejection of Maddox's renewed plea. As we have discussed, the trial judge's abrupt termination of his original colloquy with Maddox gave the defendant no opportunity to explain the inconsistency between his stated desire to plead guilty and his denial of factual guilt. Maddox's counsel later explained that Maddox simply misunderstood the judge's question—an explanation that appeared quite reasonable in light of the confusion that prevailed at the earlier proceeding. In these circumstances, the District Court was obligated to "provide a reasoned exercise of discretion" before rejecting Maddox's plea again. *Ammidown*, 497 F.2d at 622. Instead, the District Court summarily rejected the plea "in view of the circumstances and the events of last week." Trial

---

**2.** In this regard, we reject appellants' argument that Rule 11 mandated a more searching inquiry into Maddox's state of mind. Appellants correctly point out that Rule 11 calls for an extensive colloquy between the trial judge and the defendant, *see* FED.R.CRIM.P. 11(c), (d), (f), but they fail to recognize that the rule "acts primarily as a safeguard to prevent the hasty *acceptance* of guilty pleas that are not made knowingly and voluntarily," *Washington*, 969 F.2d at 1077 (emphasis added). Thus, Rule 11 establishes a series of inquiries that a District Court must conduct "[b]efore *accepting*" a guilty plea. FED R.CRIM.P. 11(c) (emphasis added).

Tr. (June 21, 1993) at 4 (emphasis added), *reprinted in* App. 56. In short, based solely on Maddox's reticence and denial of factual guilt *during the first plea colloquy*, the District Court precluded him from entering any subsequent plea, no matter how knowing and voluntary. As even the Government acknowledged at oral argument, the District Court's summary rejection of Maddox's renewed plea was arbitrary.

We certainly do not mean to suggest that a district court must conduct a full-blown guilty plea colloquy every time a defendant whose guilty plea has been rejected comes forward to offer a new plea. However, where, as here, a defendant offers a timely and reasonable explanation for actions that prompted a district court to reject a guilty plea, the court must at least exercise its discretion to ascertain whether its earlier concerns have been addressed. In this case, the District Court should have conducted an inquiry to verify the explanation submitted by Maddox's counsel, and, upon doing so, should have gone on to ensure that all of Rule 11's requirements were satisfied—*i.e.,* that the renewed plea was knowing, voluntary, and supported by a basis in fact. *See* FED.R.CRIM.P. 11(c), (d), (f). It failed to do so, and therefore abused its discretion.

■ Finally, although we recognize that the erroneous rejection of a guilty plea may be harmless where the defendant "was ultimately convicted of precisely the same charge to which he attempted to plead guilty," *Washington,* 969 F.2d at 1079, we think it obvious that the District Court's error was prejudicial in this case. Both defendants were convicted of several offenses in addition to those involved in their plea agreements. Maddox's plea agreement required him to plead guilty to a conspiracy charge and not to contest the forfeiture of his automobile. After trial, Maddox was convicted of three offenses in addition to those

encompassed by the agreement, and ordered to forfeit $3500 along with his automobile. Robinson's plea agreement required him to plead guilty to a lesser conspiracy charge and to forfeit $3500 and his automobile. He ultimately was convicted of three more serious drug-related offenses and subjected to both forfeitures. Thus, both appellants suffered significant harm from the District Court's action.

■ We reach this conclusion as to Maddox despite the fact that his convictions subjected him to the same sentence as his plea agreement.[3] While the District Court's actions may have had no impact on the total number of days of imprisonment that Maddox must serve, the collateral consequences of Maddox's additional convictions amply demonstrate the prejudice of the trial judge's error. For example, a record of drug-related violations increases the penalties available for certain federal offenses. *See, e.g.,* 18 U.S.C. § 924(e) (1988) (enhancing penalty for federal firearms offenses for persons with three previous convictions for serious drug crimes). Federal law recognizes the severity of such collateral consequences. Thus, the most remote possibility that a defendant will suffer collateral consequences from a criminal conviction is sufficient to justify appellate review of criminal proceedings even after the defendant has served his sentence. *See United States v. Fadayini,* 28 F.3d 1236, 1241 (D.C.Cir.1994) ("A criminal appeal is moot only if there is 'no *possibility* that any collateral legal consequences will be imposed' upon the defendant." (quoting *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 1899–1900, 20 L.Ed.2d 917 (1968) (emphasis added))). Accordingly, the potential collateral consequences of Maddox's additional convictions establish prejudice here.

**3.** Maddox's plea agreement required him to plead guilty to a charge of conspiracy to distribute 50 grams or more of cocaine base, an offense carrying a minimum prison sentence of 10 years, *see* 21 U.S.C. § 841(b), and corresponding to a Sentencing Guideline range of 121 to 151 months, *see* USSG § 2D1.1, ch. 5 pt. A. The

sentencing calculation performed by the District Court judge after trial likewise yielded a mandatory minimum sentence of 10 years and a Sentencing Guideline range of 121 to 151 months. *See* Sentencing Tr. (Sept. 13, 1993) at 7, *reprinted in* App. 228.

### III. Conclusion

For the foregoing reasons, we remand appellants' convictions to the District Court with instructions to permit appellants to offer guilty pleas on the terms originally agreed to by the Government. Upon satisfactory completion of plea proceedings, the jury verdicts against the appellants shall be vacated.

*So ordered.*