2005 UT 48

**STATE of Utah, Plaintiff and Respondent,**

v.

**Alex MONTIEL, Defendant and Petitioner.**

**No. 20040780.**

Supreme Court of Utah.

Aug. 5, 2005.

Mark L. Shurtleff, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen., Byron F. Burmes-ter, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Lori Seppi, Heidi Buchi, Salt Lake City, for defendant.

DURHAM, Chief Justice:

¶ 1 Defendant Alex Montiel appealed his conviction for aggravated robbery, arguing that the trial court abused its discretion in rejecting a pretrial plea agreement based on a stated policy of rejecting pleas that waive penalty enhancements for use of a firearm. The court of appeals affirmed Montiel's conviction. We granted certiorari to consider the scope of judicial discretion vis-à-vis plea agreements. We hold that trial courts retain broad—though not unlimited—discretion in accepting or rejecting plea agreements, and that, under the circumstances of this case, the trial court did not abuse its discretion. We therefore affirm the court of appeals.

## BACKGROUND

¶ 2 Montiel was charged with aggravated robbery, a first-degree felony, in violation of Utah Code section 76-6-302. If convicted, Montiel was also subject to ·an enhanced penalty pursuant to Utah Code section 76-3-203.1 because the crime was committed in concert with two or more persons. Under Utah Code section 76-3-203,[1] Montiel was arguably subject to a further enhanced penalty for use of a dangerous weapon in the commission of the underlying offense.[2]

¶ 3 During the pretrial conference the prosecutor informed the trial court that the State and Montiel had reached a plea agree-

---

1. Effective May 5, 2003, the legislature amended section 76-3-203, moving the dangerous weapon enhancement to section 76-3-203.8, which was further amended in 2004. *See* Utah Code Ann. § 76-3-203.8 (Supp.2004). All citations herein are to the law in effect at the time Montiel was tried and convicted.

2. While use of a dangerous weapon is an element of aggravated robbery, a number of cases support the proposition that a defendant charged with a crime for which use of a dangerous weapon *is an element may still be subject to an* enhanced penalty when that weapon is a firearm. *See State v. Speer,* 750 P.2d 186, 192 (Utah 1988); *State v. Angus,* 581 P.2d 992, 995 (Utah 1978); *State v. Webb,* 790 P.2d 65, 85-87 (Utah Ct.App. 1990). All of these cases, however, were decided prior to 1995, when the legislature amended the enhanced penalty statute to encompass *all* "dangerous weapons" rather than singling out firearms. *See* ch. 244, § 52, 1995 Utah Laws 813. This court has not addressed whether, under the broader statutory language, the penalty for aggravated robbery may still be enhanced for use of a dangerous weapon even though use of a dangerous weapon is an element of the substantive offense. Since this issue is immaterial to the disposition of the case before us, we leave resolution of this question for another day.

ment, in which the State agreed to reduce the aggravated robbery charge to a third-degree felony in exchange for a guilty plea.[3] The prosecutor explained that there were "some facts that [made] the story not as presentable to the jury and [he] would rather accept the ... lesser plea than run the risk of (inaudible)."

¶ 4 The trial court responded by noting that Montiel had been charged with a first-degree felony, which was further subject to enhanced penalties because Montiel had "used a firearm [and] committed a crime with four other persons." The court questioned why "the State want[ed] to drop this down to a third-degree felony" and then stated, "Well, I don't waive firearms enhancements, folks. You plead them, they're stuck unless I'm convinced that there was some mistake in pleading."

¶ 5 Defense counsel then offered judicial economy as an additional reason for the plea agreement. The trial court responded:

> I don't care about judicial economy when people are alleged to have used firearms in the commission of a crime. I'll take whatever time is necessary to resolve the issue properly. I'm not going to waive the firearms enhancement[ ][u]nless you can tell me you don't have any evidence that [defendant had] a firearm or there wasn't a firearm or your witness is lying.

The prosecutor then commented that it was "just a matter of weighing ... the case" and that "sometimes it's better to have the ... verdict in hand than ... two in the bush." He further explained that the objective of the agreement was to ensure that "a dangerous person" was locked up. The court responded by saying, "Lock him up for zero to five, what kind of a deal is that?" The prosecutor replied, "It's better than zero to zero."

¶ 6 The court then inquired about the victim's response to the plea agreement. The prosecutor stated that he had "not talked to the victim about this particular one, although [he had] talked to the victim previously about offering a second (inaudible)." The trial court expressed reservations about accepting

a plea when the State had not "even told the person who claims all these things occurred as to what [the State was] going to do." The court declared that the victim was "entitled to know."

¶ 7 Following this exchange, the trial court announced its ruling: "I'm not going to allow the filing of [the] amended Information [sic] at this point and I'm not going to accept any plea to a third-degree felony on the basis of what I've heard." Thereafter Montiel was tried and convicted of aggravated robbery, with sentencing subject to penalty enhancements both for committing the crime in concert with two or more persons and for using a dangerous weapon. Montiel appealed his conviction, arguing that the trial court's comments at the pretrial hearing demonstrated a fixed policy of refusing to accept plea bargains in cases involving firearms, and that rejecting Montiel's plea on the basis of such a policy constituted an abuse of the court's discretion.

¶ 8 The court of appeals affirmed Montiel's conviction, reasoning that,

> [a]lthough not crystal clear, the record in this case is sufficient to support the State's argument that the trial court rejected the plea agreement, not only because the underlying charge involved the use of a firearm, but also because the court was concerned that Defendant would receive too lenient a sentence under the terms of the agreement and because the victim had not been informed of the agreement.

*State v. Montiel*, 2004 UT App 242, ¶ 17, 95 P.3d 1216. We granted Montiel's petition for a writ of certiorari as to the following issue: whether the trial court's stated policy of refusing to allow plea reductions in cases where a firearm had been used constituted a refusal to properly exercise its discretion in assessing the appropriateness of the plea agreement.

## STANDARD OF REVIEW

¶ 9 "On certiorari, we review the decision of the court of appeals and not that

---

3. The record does not reflect the specific third-degree felony to which Montiel agreed to plead guilty.

of the district court." *State v. Brake*, 2004 UT 95, ¶ 11, 103 P.3d 699. "We conduct that review for correctness, ceding no deference to the court of appeals." *Id.* "The correctness of the court of appeals' decision turns on whether that court accurately reviewed the trial court's decision under the appropriate standard of review." *State v. Visser*, 2000 UT 88, ¶ 9, 22 P.3d 1242. The standard of review in assessing the appropriateness of a trial court's acceptance or rejection of a plea agreement is abuse of discretion. *State v. Turner*, 980 P.2d 1188, 1189–90 (Utah Ct. App.1998). A failure to exercise discretion is generally encompassed within the meaning of abuse of discretion. *See United States v. Miller*, 722 F.2d 562, 565 (9th Cir.1983) ("[A]s a general rule, the existence of discretion requires its exercise."); *People v. Darlington*, 105 P.3d 230, 232 (Colo.2005) ("[F]ailure to exercise discretion is itself an abuse of discretion."). Therefore, we must determine whether the court of appeals correctly decided that the trial court properly exercised its discretion in rejecting the plea agreement.

## ANALYSIS

¶ 10 Montiel contends that the court of appeals erred in affirming his conviction because the trial court (1) failed to consider all legally relevant factors; (2) exceeded the scope of its authority; and (3) acted arbitrarily in its rejection of the plea agreement. We first outline the scope of judicial discretion in rejecting plea agreements. We then address each of Montiel's arguments in turn.

## I. JUDICIAL DISCRETION REGARDING PLEA AGREEMENTS

¶ 11 We begin by noting that there is no constitutional principle that obliges a trial court to accept a defendant's guilty plea. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("There is, of course, no absolute right to have a guilty plea accepted."); *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160,

27 L.Ed.2d 162 (1970) ("A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court...."). Indeed, "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

¶ 12 We generally adhere to the proposition that, subject to constitutional constraints, "[t]he Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively best judge of whether a pending prosecution should be terminated." *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir.1975); *see United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Plea bargains, however, implicate not only the ordinarily plenary executive power to indict or dismiss; they also "go to the traditionally judicial function of determining what penalty to impose." *United States v. Escobar Noble*, 653 F.2d 34, 37 (1st Cir.1981); *see also United States v. Torres–Echavarria*, 129 F.3d 692, 696 (2d Cir.1997) ("[W]hen the dismissal of charges or agreement not to pursue potential charges is conditioned on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated."). Thus, after initial charges have been filed, the vast majority of courts permit, encourage, or require some degree of judicial discretion in accepting or rejecting such arrangements.

¶ 13 Moreover, it is well established under Utah law that trial courts are not required to accept plea agreements. This principle is based on the plain language of rule 11 of the Utah Rules of Criminal Procedure, which explicitly provides that "[t]he court *may refuse* to accept a plea of guilty." Utah R.Crim. P. 11(e) (emphasis added).[4] This discretion extends to guilty

---

4. Contrary to the court of appeals' understanding, rule 11(g)(1) does not conflict with this statement. That rule provides that, "[i]f it appears

that the prosecuting attorney or any other party has agreed to request or recommend the acceptance of a plea to a lesser included offense, or the

pleas that are tendered as part of a plea bargain. *See State v. Stringham,* 2001 UT App 13, ¶ 14, 17 P.3d 1153; *Turner,* 980 P.2d at 1190; *State v. Mane,* 783 P.2d 61, 66 (Utah Ct.App.1989).

■■■ ¶ 14 The foregoing, however, does not imply that a trial court may reject a guilty plea arbitrarily. We acknowledge that the state is usually in a better position than the court to determine whether a plea agreement is in the public interest, and we do not take lightly the role of prosecutorial discretion in this regard. We affirm that, generally speaking, "courts should be wary of second-guessing' prosecutorial choices." *Miller,* 722 F.2d at 565. Even as we acknowledge prosecutorial prerogatives regarding plea agreements, however, we also recognize that unfettered discretion invites abuse. Thus, some oversight from the bench is necessary both to "protect a defendant from the power of coercion and abuse of the state, [and] also [to] protect the interests of other members of our society in living in a peaceful, orderly atmosphere." *Daniels v. State,* 453 N.E.2d 160, 165 (Ind.1983). The trial court has an important role to play in assessing the appropriateness of a proffered plea agreement—especially where there is evidence of either an overzealous or a lackadaisical prosecution—and "may reject a plea in the exercise of sound judicial discretion."[5] *Santobello,* 404 U.S. at 262, 92 S.Ct. 495.

## II. SCOPE OF DISCRETION

[14] ¶ 15 Having established that the exercise of judicial discretion in such matters is both necessary and proper, we now must define the extent of that discretion. Because Utah case law is not fully developed on this issue, we look to "the case law from other jurisdictions for guidance." *Arndt v. First Interstate Bank of Utah, N.A.,* 1999 UT 91, ¶ 17, 991 P.2d 584.

¶ 16 In regard to accepting or rejecting plea agreements, jurisdictions vary, as to precisely what degree of discretion is appropriate and the manner in which that discretion must be exercised. The numerous approaches, each with its own particular nuances, do not lend themselves to easy categorization. However, we are able to extract principles common to the majority of jurisdictional approaches that inform our analysis. Those principles are: (1) that trial courts retain broad discretion to reject plea agreements, but may not do so arbitrarily; (2) that courts need not methodically consider a list of mandatory factors before rejecting a plea agreement; and (3) that courts must state their reasoning for rejecting a proposed plea agreement on the record.

### A. Court Cannot Arbitrarily Reject a Proposed Plea Agreement

¶ 17 With a few notable exceptions,[6] the vast majority of jurisdictions require *some* affirmative exercise of discretion on the part of the trial court before rejecting a plea agreement; that is, courts are not permitted to categorically reject all plea bargains.[7]

dismissal of other charges, the agreement shall be approved by the court." Utah R.Crim. P. 11(g)(1). This is not to be interpreted as an affirmative obligation on the part of the court to accept a plea agreement. Rather, it is merely a statement of procedure, indicating that the court's approval is necessary in order to effectuate the plea agreement.

5. Of course, under the Utah Rules of Criminal Procedure there are also specific circumstances in which a trial court is *compelled* to reject a guilty plea. The remainder of rule 11(e) delineates such circumstances, none of which is applicable here.

6. *See United States v. Moore,* 637 F.2d 1194, 1196 (8th Cir.1981) (holding that "a district court is under no duty to consider a negotiated plea agreement"); *United States v. Stamey,* 569 F.2d

805 (4th Cir.1978) (similar); *United States v. Jackson,* 563 F.2d 1145, 1148 (4th Cir.1977) ("In our opinion each individual judge is free to decide whether, and to what degree, he will entertain plea bargains, and his refusal to consider any plea bargaining whatsoever will not vitiate a guilty plea which has otherwise been knowingly and voluntarily entered."). These exceptions to the general rule appear to be limited to the Fourth and Eighth Circuits. We can find no other cases that directly stand for the proposition that a court may categorically refuse to consider *all* plea agreements.

7. This is not necessarily true regarding plea agreements that involve only sentencing recommendations, i.e., those in which the prosecutor agrees to recommend a more lenient sentence (or not to seek a harsher one) in exchange for a

*See, e.g., Darlington,* 105 P.3d at 232 (holding that "trial courts cannot reject a plea on an arbitrary basis" but must "give the plea agreement due consideration before reaching a decision on whether to grant [it]").[8] This rule against arbitrary or blanket rejections of plea agreements makes sense in light of the fact that plea bargaining is "an essential component of the administration of justice," and that, when "properly administered, it is to be encouraged." *Santobello,* 404 U.S. at 260, 92 S.Ct. 495. We therefore adopt the majority rule in requiring an affirmative exercise of discretion on the part of the trial court prior to rejecting a plea agreement.

### B. Court Need Not Apply a Specific List of Factors in Rejecting a Plea Agreement

¶ 18 Even while recognizing the need to exercise discretion, few jurisdictions have imposed rigid boundaries on a trial court's exercise of this discretion. *See, e.g., State v. Hager,* 630 N.W.2d 828, 834 (Iowa 2001) (noting that in the context of plea bargains, "there are no established criteria or standards to consider in the exercise of discretion"); *State v. Brown,* 268 Neb. 943, 689 N.W.2d 347, 351 (2004) (noting that, judicial discretion to reject plea bargains "is not unlimited" but "declin[ing] to adopt specific limitations"). Similarly in the federal courts, the rules of procedure "do[ ] not purport to establish criteria for the acceptance or rejection of a plea agreement." *United States v. Severino,* 800 F.2d 42, 45 (2d Cir.1986).[9] Indeed, "[j]ust how much 'consideration' should be given to the disposition agreed to by the prosecutor and just how 'independent' the judge should be in these circumstances is a most difficult issue, seldom addressed in the cases."[10] 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.3(e) (2d ed.1999).

8. *See also United States v. Maddox,* 48 F.3d 555, 558 (D.C.Cir.1995) ("[T]he rule in this circuit and others is that 'the trial judge must provide a reasoned exercise of discretion in order to justify a departure from the course agreed on by the prosecution and defense.' " (quoting *United States v. Ammidown,* 497 F.2d 615, 622 (D.C.Cir. 1973))); *United States v. Moore,* 916 F.2d 1131, 1136 (6th Cir.1990) ("By leaving the decision whether to accept or reject a plea to the 'exercise of sound judicial discretion,' the Supreme Court did not intend to allow district courts to reject pleas on an arbitrary basis." (quoting *Santobello,* 404 U.S. at 262, 92 S.Ct. 495)); *Miller,* 722 F.2d at 566 (holding that "courts must review individually every charge bargain placed before them"); *United States v. Delegal,* 678 F.2d 47, 50 (7th Cir.1982) ("While a defendant has no absolute right to have a guilty plea accepted, a court must exercise sound discretion in determining whether or not to reject a plea. Thus, a defendant is entitled to plead guilty unless the district court

guilty plea to the original crime charged. Such "sentence bargains" directly implicate the judicial authority to affix punishment and in many jurisdictions—particularly in the federal courts— a judge retains the prerogative to reject all such plea agreements. *See, e.g., United States v. Robertson,* 45 F.3d 1423, 1437 (10th Cir.1995); *Miller,* 722 F.2d at 564; *Hoskins v. Maricle,* 150 S.W.3d 1, 24 (Ky.2004); *Sandy v. Fifth Judicial Dist. Court,* 113 Nev. 435, 935 P.2d 1148, 1151 n. 1 (1997). Because the case before us does not involve a plea agreement of this type, our analysis is limited to "charge bargains," or those in which the prosecutor agrees to reduce or dismiss the original charge(s) in exchange for a guilty plea on some other charge(s).

can articulate a sound reason for rejecting the plea."); *Hoskins,* 150 S.W.3d at 24 (holding that a court "may not adopt a categorical policy to reject all charge ... bargains" and must "independently review each bargain placed before it"); *Sandy,* 935 P.2d at 1150 (holding that, while a trial court has discretion to reject a guilty plea, the court is nonetheless "obligated to consider seriously the proffered plea"); *State v. Hunt,* 145 Vt. 34, 485 A.2d 109, 114 (1984) (noting that a "plea should not be refused without good reason").

9. *See also Robertson,* 45 F.3d at 1437 ("While Rule 11 vests district courts with the discretion to accept or reject plea agreements, the rule does not define the criteria to be applied in doing so."); *United States v. Bean,* 564 F.2d 700, 703 (5th Cir.1977) ("The plea agreement procedure does not attempt to define criteria for the acceptance or rejection of a plea agreement.... While appellate courts have reviewed the refusals of plea bargains, little attention has been given to the formulation of a standard for the district court's exercise of discretion.").

10. A few have tried, however. *See, e.g., Hunt,* 485 A.2d at 114–15 (listing the American Bar Association's Minimum Standards on Pleas of Guilty as "considerations appropriate for application by the trial court in determining whether it should accept or reject a plea bargain agreement" but also affirming that judges exercise "independent judgment, based upon heritage, environment, education and a myriad of other influences"); *State v. Sears,* 208 W.Va. 700, 542 S.E.2d 863, 867 (2000) (enunciating a "primary test to determine whether a plea bargain should be accepted or rejected").

¶ 19 Given the absence of clear guidelines, the prevailing approach among those courts that have considered this issue is decidedly ad hoc. Courts generally limit their investigation of what constitutes a valid reason for rejecting a plea agreement to the individual circumstances of the case at hand. We likewise decline to set forth a specific list of mandatory factors that a judge must consider before rejecting a plea agreement. Rather, the trial court must simply demonstrate that it gave sufficient consideration to the plea prior to rejecting it such that the decision to reject was not arbitrary.

### C. Court Must State Its Reasons for Rejecting a Plea on the Record

¶ 20 As a means of demonstrating that the trial court gave all due consideration to the plea, the majority of jurisdictions require that judges make their reasoning for rejecting a proposed plea agreement a matter of record. See, e.g., Darlington, 105 P.3d at 232 ("The trial court must ... articulate the reasons for rejecting an agreement on the record.").[11] We agree that "requiring district courts to articulate a sound reason for rejecting a plea is the surest way to foster the sound exercise of judicial discretion." Moore, 916 F.2d at 1136. By adopting this rule, we "facilitate[ ] appellate review when the defendant contends that the district court abused its discretion in rejecting a plea." United States v. Kraus, 137 F.3d 447, 453 (7th Cir.1998); see also Robertson, 45 F.3d at 1438 ("Requiring district courts to articulate the reasons for rejecting a plea agreement not only helps insure the court is aware of and gives adequate deference to prosecutorial discretion, it is the surest, indeed the only

way to facilitate appellate review of rejected plea bargains.").

¶ 21 To summarize, the weight of authority stands for the following propositions: (1) while a trial court retains broad discretion to reject a proposed plea agreement, it may not do so arbitrarily; (2) a court need not apply a list of mandatory factors in rejecting a plea; but (3) it must state its general reasoning for rejecting the plea on the record. We adopt these principles for review of plea agreements in Utah.

### III. TRIAL COURT'S EXERCISE OF DISCRETION

¶ 22 Having outlined the principles governing judicial rejection of plea agreements, we now determine whether the trial court's action here was in accord with them. We conclude that the trial court was well within its discretion in rejecting the plea agreement in this case and consequently reject each of Montiel's three arguments, listed above.

### A. "Legally Relevant Factors"

¶ 23 Montiel first argues that the trial court abused its discretion by failing to consider "all legally relevant factors" before rejecting the proposed plea agreement. In support of this claim, Montiel cites this court's statement, made in the context of sentencing review, that a trial court abuses its discretion if it "fails to consider all legally relevant factors." State v. McCovey, 803 P.2d 1234, 1235 (Utah 1990). He then cites certain cases from other jurisdictions that have sought to identify what factors are legally relevant in the context of plea bargaining.[12] As we noted above, however, most

---

11. See also Maddox, 48 F.3d at 558 (citing with approval the rule that judges must set forth on the record their reasons for rejecting a plea); Robertson, 45 F.3d at 1438 (requiring district courts to "set forth, on the record, the prosecution's reasons for framing the bargain and the court's justification for rejecting it"); Miller, 722 F.2d at 566 (similar); Delegal, 678 F.2d at 50 (holding that a court must "articulate a sound reason for rejecting the plea"); Hoskins, 150 S.W.3d at 24 (holding that "the trial court must articulate [its] reasons for rejecting [a plea bargain]"); Sandy, 935 P.2d at 1150 ("If the judge rejects a plea bargain, he or she ... must state reasons for the disapproval."); State v. Daniels,

276 N.J.Super. 483, 648 A.2d 266, 268 (Ct.App. Div.1994) (agreeing that "a judge's reasons for rejection of a plea should be made known"); Hunt, 485 A.2d at 114–15 (similar).

12. Of all the cases cited by Montiel, however, only one comes even marginally close to establishing firm criteria for rejecting plea agreements. That case notes that

[a] primary test to determine whether a plea bargain should be accepted or rejected is in light of the entire criminal event and given the defendant's prior criminal record whether the plea bargain enables the court to dispose of the

jurisdictions decline to specify all those factors that are legally relevant in rejecting plea agreements, and for good reason. First, it would be quite difficult—if not impossible—to anticipate the myriad potential legitimate bases for rejecting plea agreements. Second, to adopt stringent guidelines would undermine our stated goal of vesting trial courts with broad discretion in this area.

■■■■ ¶ 24 Because we have elected not to set forth any mandatory list of factors that must be considered when rejecting a plea agreement, we cannot import the definition of abuse of discretion in the context of sentencing (where mandatory factors are indeed defined [13]) for use in the context of plea bargaining. More appropriate language defining the abuse of discretion standard for this context is found in our decision in *State v. Arguelles*, 2003 UT 1, 63 P.3d 731, in which we held that "a trial court has abused its discretion only if the trial court's decision [is] beyond the limits of reasonability," or, in other words, that an abuse of discretion has occurred "if the trial court's actions are inherently unfair or if . . . no reasonable person would take the view adopted by the trial court." *Id.* at ¶ 101, 63 P.3d 731 (internal quotation omitted). So long as the trial court carefully considers a proffered plea agreement and states its reasons for rejecting the plea in the record, it will not be overturned on appeal unless it can be said that the trial

court's decision was "beyond the limits of reasonability." *Id.* Other jurisdictions have adopted a similar standard. *See, e.g., United States v. Greener*, 979 F.2d 517, 519 (7th Cir.1992) ("[W]e will not reverse the district court's decision [to reject a plea agreement] if any reasonable person could agree with the district court."); *Darlington*, 105 P.3d at 232 ("Where the trial court clearly exercises independent judgment in rejecting the plea agreement and sets forth on the record its reasons for doing so, its ruling will not be set aside on appeal.").

¶ 25 Because we decline to adopt the unnecessarily burdensome standard Montiel proposes, Montiel's first argument fails.

### B. Scope of Judicial Authority

■■■■ ¶ 26 Montiel next argues that the trial court abused its discretion because its rejection of the plea agreement "exceed[ed] the limits [of judicial authority] prescribed by law." *State v. Bluff*, 2002 UT 66, ¶ 66, 52 P.3d 1210. In support of what is essentially a separation of powers argument, Montiel cites cases from two jurisdictions that place great emphasis on prosecutorial discretion to enter into plea agreements and therefore require a trial court to show abuse of that discretion or other similarly extreme circumstances before it is permitted to reject a plea agreement.[14] As we noted above, however,

---

case in a manner commensurate with the seriousness of the criminal charges and the character and background of the defendant.

*Sears*, 542 S.E.2d at 867 (internal quotation omitted). In other words, West Virginia apparently requires that a court collect much of the information typically included in a presentence report prior to rejecting a plea agreement. Montiel has offered us no compelling reason to follow this minority approach, which seems to us unnecessary and burdensome.

**13.** *See, e.g.,* Utah Code Ann. § 76–3–401(2) (2003) (enumerating factors for the court to consider "[i]n determining whether state offenses are to run concurrently or consecutively," including "the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant"); *id.* § 76–3–201(7)(e) (requiring the court to consider "sentencing guidelines regarding aggravating and mitigating circumstances promulgated by the Sentencing Commission" when "determining a just sentence").

**14.** Montiel principally relies on *United States v. Ammidown*, 497 F.2d 615, 622 (D.C.Cir.1973) (holding that a trial judge may not reject a plea bargain unless "he can say that the action of the prosecuting attorney is such a departure from sound prosecutorial principle as to mark it an abuse of prosecutorial discretion"); *Sparks v. State*, 104 Nev. 316, 759 P.2d 180, 185 (1988) (same); and their progeny. Other than these two jurisdictions, we can find no others that have adopted so draconian a limitation on judicial discretion. Indeed, many courts have explicitly repudiated the rule in *Ammidown*. *See, e.g., Moore*, 637 F.2d at 1196 n. 3 ("The precedential value of *Ammidown* has been considerably diminished since the adoption of the 1974 amendments to Rule 11 that were intended to increase the discretionary authority of the district court in dealing with guilty pleas."); *Bean*, 564 F.2d at 703 n. 4 (noting that "[t]o our knowledge no other circuit has followed the District of Columbia. in so drastically limiting the discretion of a judge in regard to plea bargains"); *Brown*, 689 N.W.2d at 351 ("specifically declin[ing]" to fol-

in the vast majority of jurisdictions such a stringent restriction on judicial discretion is limited to the inherently executive powers of indictment and dismissal, and not to plea bargains, in which both executive and judicial functions are involved. The simple fact that a plea bargain may contain an agreement to dismiss one or more charges does not limit judicial discretion in considering the plea. Even though a "plea bargain [may be] cast in the form of a dismissal of [a] count, [its] effect [is] to limit the sentence available;" thus, "the district judge [may] properly exercise[ ] reasonable discretion in rejecting the plea bargain." *United States v. Carrigan,* 778 F.2d 1454, 1463 (10th Cir.1985) (internal quotation omitted); *see also Torres–Echavarria,* 129 F.3d at 697 ("[A] prosecutor's proposal to dismiss a claim ... in consideration of a plea of guilty to some other offense ... implicates core judicial functions. In such a case, the court's adjudicatory and sentencing responsibilities justify active scrutiny of the plea agreement. ...").

¶ 27 We thus do not believe that any separation of powers concerns are implicated in this case. Indeed, our discussion above distinguishes this case from those in which such concerns might arise. Here, it is clear that the trial court was well within its authority to review and reject the proposed plea agreement. Thus, Montiel's second argument also fails.

## C. Arbitrariness

¶ 28 Lastly, Montiel argues that the trial court was arbitrary in its decision to reject the proposed plea agreement and therefore abused its discretion. As noted above, we agree that a trial court may not "reject pleas on an arbitrary basis." *Moore,* 916 F.2d at 1136. We disagree, however, that the trial court in this case acted arbitrarily.

¶ 29 Montiel insists that the trial court refused to consider the proffered plea agreement solely because the court had a fixed policy never to waive firearm enhancements. We agree with the court of appeals that the record instead supports the conclusion that the trial court considered at least three different factors before rejecting the proposed plea agreement: (1) the violent nature of the offense (a robbery committed with a firearm), (2) the effective reduction in felony level that the plea would produce and the corresponding reduction in the possible term of imprisonment, and (3) the fact that the victim had not been informed of the specific plea agreement reached between the prosecution and defendant. Either of these two latter criteria, on their own, would likely have provided a legitimate basis for the trial court to reject the plea agreement,[15] and when combined that is certainly the case. We are confident, based on the exchange in the record, that all of these factors, in combination with the violent nature of the crime, led the trial court to reject the plea agreement.

¶ 30 While the trial court used language signaling finality in his references to firearm enhancements at the outset of the presentation of the plea agreement, it did not reject the plea at that juncture. Rather, it was only after further discussion of the available sentence and of the status of notice to the victim that the trial court reached and announced a decision. Identifying a predilection against a certain type of plea agreement is a far cry from refusing to even consider a plea. Indeed, if the trial court had arbitrarily applied an unwavering policy as Montiel suggests, one would have expected the court to terminate discussion and reject the plea at the outset. Instead, the court entertained an

low *Ammidown's* "attempt[ ] to define the scope of a judge's discretion to reject a guilty plea").

**15.** This proposition, at least in regard to excessive leniency as a basis for rejecting a plea, finds support among most federal appellate courts and a large number of state courts. *See, e.g., United States v. Jeter,* 315 F.3d 445, 447 (5th Cir.2002); *United States v. Gamboa,* 166 F.3d 1327, 1330–31 (11th Cir.1999); *Torres–Echavarria,* 129 F.3d at 696; *Robertson,* 45 F.3d at 1439; *United States v.*

*Skidmore,* 998 F.2d 372, 376 (6th Cir.1993); *Carrigan,* 778 F.2d at 1462; *Miller,* 722 F.2d at 563; *Bean,* 564 F.2d at 704; *Hoskins,* 150 S.W.3d at 25; *State v. Southworth,* 132 N.M. 615, 52 P.3d 987, 997 (Ct.App.2002); *Hunt,* 485 A.2d at 112–13. In regard to a failure to inform the victim of a plea agreement as a basis for rejecting the plea, see *Hoskins,* 150 S.W.3d at 25–26; *State v. Boatfield,* 2001 WL 1635447, at *8 (Tenn.Ct.App. Dec. 20, 2001).

ensuing dialogue at some length, and even furthered this discussion on its own by raising—unprompted by either party—the issue of whether the victim had been informed of the plea. Thus, we cannot say that the court's decision to reject the plea in this case was arbitrary. Consequently, Montiel's third argument also fails.

## CONCLUSION

¶ 31 A trial court must affirmatively exercise its discretion prior to rejecting a plea agreement by giving due consideration to the proffered plea. The court need not apply a list of mandatory factors, but it must state its reasons for rejecting the plea on the record so as to demonstrate that the court did not reject the plea arbitrarily. If the record reflects such reasoning, the trial court will not be overturned on appeal unless the appellate court determines that the trial court's rejection of the plea agreement was "beyond the limits of reasonability." *Arguelles*, 2003 UT 1 at ¶ 101, 63 P.3d 731. Under the circumstances of this case, we hold that the trial court adequately stated its reasons for rejecting the plea on the record and that its determination was well within the bounds of reason. Therefore, the court did not abuse its discretion. Accordingly, the judgment of the court of appeals is affirmed.

¶ 32 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.